HENRY J. BOWERS *vs.* CONNECTICUT RIVER RAILROAD
COMPANY.

Hampshire.     September 18, 1894. — October 24, 1894.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Negligence — Count at Common Law — Employers'*
*Liability Act — Defective Condition — Evidence.*

If, in an action for personal injuries occasioned to the plaintiff while in the employ
of a railroad corporation, there is no sufficient evidence that the defendant had
failed to make proper provision for the inspection of its cars, but it appears
that the neglect, if any, was that of a fellow servant, the plaintiff cannot recover
under a common law count in his declaration which alleges the duty of inspec-
tion on the part of the defendant, and injury to the plaintiff in consequence of
its failure to inspect.

A car in use by or in the possession of a railroad company is to be considered a
part of the ways, works, or machinery of the company using or having the
same in possession, within the meaning of St. 1887, c. 270, whether such car is
owned by it or by some other company.

In an action for personal injuries occasioned to the plaintiff, while in the employ
of a railroad corporation coupling cars, by reason of defective drawbars which
had not been discovered or remedied owing to the negligence of a person in the
service of the defendant intrusted with the duty of seeing that the cars were
in proper condition, there was evidence that there was an opportunity for too
much lateral motion of the drawbars, and especially of the drawbar on the
stationary car, and also that the failure to discover or remedy the alleged defect
was negligence on the part of the defendant's inspectors of cars. *Held,* that the
judge erred in directing a verdict for the defendant, and that the case should
have been submitted to the jury.

If, in an action for personal injuries occasioned to the plaintiff while in the employ
of a railroad corporation, a count in the declaration alleges that the accident
was due to a defective condition which had not been remedied or discovered
owing to the negligence of the defendant, or of some person in its employ
intrusted with and exercising superintendence, or whose sole or principal duty
was that of superintendence, there is no case for the jury if there is no evidence
of negligence on the part of any superintendent or person exercising superin-
tendence for the defendant.

TORT, for personal injuries occasioned to the plaintiff while in
the defendant's employ as a freight brakeman.    The declaration
was in three counts.    The first count, which was at common
law, alleged that it was the duty of the defendant properly to
inspect the cars of other companies coming upon its road, and
that it had failed so to do, in consequence whereof the plaintiff

was injured.  The second count, which was under St. 1887, c. 270, alleged that the plaintiff was injured while attempting to couple " two freight cars, both of which were defective in not having suitably constructed and adjusted drawbars and drawbar pockets or sockets, whereby the head of one drawbar did slip out of place and by the other drawbar, and thereby caused the injury aforesaid ; and these cars were used in the business of the defendant, and these defects arose from, or had not been discovered or remedied owing to, the negligence of the defendant, or of some person or persons in its employ intrusted with the duty of seeing that such cars were in proper condition."  The third count, which was also under St. 1887, c. 270, alleged a defective condition identical with that stated in the second count, and then alleged that " this defective condition was not remedied or discovered owing to the negligence of the defendant, or of some person in its employ intrusted with and exercising superintendence, or whose sole or principal duty was superintendence."

Trial in the Superior Court, before *Dewey,* J., who reported the case for the determination of this court, in substance as follows.

The plaintiff testified that the accident occurred on December 8, 1892, while he was in the employ of the Connecticut River Railroad Company as a yard brakeman; that he had been so employed one week and three days, and that he was one of a number of men employed in switching cars to make up a train which was about to go north, and the train had been to the north end of the yard after water, and three cars were attached to the engine. These cars were backed down against a Delaware and Hudson coal-car, and he made an attempt to couple these cars together ; and the drawbars slipped by and caught his hand.  The car nearest to the coal-car was a Michigan Central box-car, and both of them had come over from the Fitchburg Railroad on that morning or the previous night.  He further testified that he was employed by one Benjamin, a train-master, and had not received any instructions as to how to shackle the cars together; that in attempting to shackle the cars together he went between them, facing the Delaware and Hudson coal-car, with his right hand upon the coal-car, with one foot inside the rail, and attempted to raise the link with his left hand, and his arm was caught between the dead wood and the head-block; that he

could not reach the pin without stepping one foot inside the rail; that that was the way in which he was accustomed to shackle cars ; that the Michigan Central car was loaded with corn, and the Delaware and Hudson car with coal, when received by the defendant; that they were being put into the train to go north over the Connecticut River Railroad ; and that at this time the conductor was near the north end of the yard throwing a switch.    On cross-examination he testified that he had previously worked nine or ten months for the Fitchburg railroad as yard brakeman, doing the same kind of work, and had experience in coupling cars under the circumstances that existed when he was injured ; that the switch gang consisted of five men working in the Greenfield yard, and he was "tail-end man"; and that he could not tell the height of the bunter on the Delaware and Hudson coal-car or on the Michigan Central box-car, but thought that they were nearly the same height, — did not think they would vary an inch, but thought the bunter of the coal-car was "a little mite higher than the other."    He further testified that neither drawbar went under the other, but they slipped by on the side; that the one the link was in went by ; that the link was in the drawbar of the Delaware and Hudson car ; that it was straight; that he had to hold it and get it into the bunter of the grain-car as it came down ; that the drawbar was not opposite the other; that the grain-car struck on the east side ; that he was on the west side, with his face towards the Delaware car ; that he could not tell how the cars were going to strike; that the car was coming quite fast, though no faster than usual ; that he got the pin into the grain-car, and the link slid right by, striking on the east side of the drawbar ; that he could not steer it into the receptacle, as he did not have time to pull a drawbar over there then ; that he did not have time to get out of the way, and that he got caught, as there was too much play in the draw-bars.    He further testified, on cross-examination, that he never saw a drawbar swing before over an inch; that he never saw drawbars go by in this way before ; that if he had got the link in that was fastened to the coal-car, it would not have slipped by unless the link broke; that he should say that there was a small drawbar where there should have been a big one, and that the fault of the company was due to the fact that there was too

much play between the drawbars; that he did not know, and he only so heard; that he did not know of any reason why the defendant company was at fault; and that the track on which all the cars in question were was perfectly straight.

One Woodlock, called by the plaintiff, testified that he found the drawbars locked by each other, and examined them and found that there was too much play in the drawbar; that there was most play in the pocket of the coal-car, — all of four inches; that there was not quite so much play in the box-car; that he had been employed in railroad business for about eight years, and most of the time as a freight brakeman; that he had a chance to observe the play of drawbars during that time, and that there ought not to be over an inch. On cross-examination he testified that cars could not be hauled around curves unless they had some play, or unless they had skeleton drawbars, which none of these cars had; that there was more than one inch play in this case, and more than was necessary; that he saw the cars in the condition in which they were left; that the drawbars were locked by each other; that he was not observing with regard to the height of the drawbars from the ground, but thought one drawbar was probably two inches higher than the other; that the play of the drawbars was visible to any one who could look at it or inspect it; and he had never seen cars slip by in this way before; that there were inspectors there, Young and Jones, but that he did not see either of them inspect the cars; and that he took particular notice that the pocket was nine inches wide, and the drawbar in it was only five inches, although he did not take exact measurements, and the pocket was too wide for the drawbars that were in there. He further testified that the mark which indicated that cars had been inspected was the letter " H " as a station mark, with the day of the month added; that he went on each side of the car, and saw no such mark on the cars in question. And on re-cross-examination he testified that he was not looking for those particular marks, and they might have been there for all he knew.

One Betters testified that he was employed as a switchman in the Greenfield yard on the day of the accident and was at the place a few minutes after the accident occurred; that the drawbars were slipped by each other on the side; that he could not

say just how much space there was between the drawbars and the socket, but it looked as though there was too much, as though the wrong drawbar had been put in ; that he knew the inspection mark which was put upon the cars with chalk to show that they had been inspected, — for that day it would be " 8 H " ; that he did not notice any such marks on the cars ; and that he noticed the amount of play in the pocket of the drawbars, and as near as he could say there was four inches play on the Delaware and Hudson car, and two inches play on the other car.

Woodlock, being recalled, testified as follows :

" *Q.* Did you know what the inspection mark was on that day ? *A.* The letter ' H ' was the station mark, with the date of the month.

" *Q.* So that the inspection mark would be what ?  *A.* ' 8 H.' "

He further testified that he went both sides of the car, and did not see any such mark, and that he did not notice any marks at all on either car.   On cross-examination he testified that his attention was not called to the marks ; that he was not looking for them; that he did not know whether they were there or not, and that they might have been there for all he knew.

One Jones, called by the plaintiff, testified that he was employed under one Young as foreman in general inspection and repairing of cars; that he was employed at Greenfield a part of the time, and was at work there on the day of the accident ; that the proper inspection mark for that day, if the cars had been inspected, was " 8 H " on the opposite corners of the cars ; that he could not swear whether the cars were or were not inspected on that day ; that in the inspection of cars only Young and Jones were employed, and when inspecting one went on one side and one on the other, — Young on the east side and Jones on the west ; that they did not look particularly at the yoke to see how much play there was; that if the drawbar and the bolts that held the yoke or strap were sound, they let the car go ; and to the question, " Can you say whether or not you looked at either of these cars to see how much play there was ? " he answered, " I could not swear that I ever saw the cars."

At the close of the plaintiff's evidence, the judge, at the defendant's request, directed a verdict for the defendant, and reported the case for the determination of this court.   If the

ruling was right, judgment was to be entered on the verdict; otherwise, a new trial was to be ordered.

*J. C. Hammond*, (*H. P. Field* with him,) for the plaintiff.

*W. G. Bassett*, for the defendant.

ALLEN, J.   Under the first count, which was at common law, the plaintiff had no case for the jury.   The common law duty of the defendant was that of inspection, and there was no sufficient evidence that it had failed to make proper provision for the inspection of the cars.   The neglect, if any, was that of a fellow servant.   *Mackin* v. *Boston & Albany Railroad*, 135 Mass. 201. *Keith* v. *New Haven & Northampton Co.* 140 Mass. 175.   *Coffee* v. *New York, New Haven, & Hartford Railroad*, 155 Mass. 21.

The second count was under St. 1887, c. 270, and alleged, in substance, that the two cars were defective in not having suitably constructed and adjusted drawbars and drawbar pockets or sockets, whereby the head of one drawbar slipped out of place and by the other drawbar, and thereby caused the injury; and that the defects had not been discovered or remedied owing to the negligence of the defendant, or of some person or persons in its employ, intrusted with the duty of seeing that the cars were in proper condition.

The first question under this count is whether the cars were a part of the ways, works, and machinery used in the business of the defendant, within the meaning of the statute.   They were loaded freight cars, which had come from other railroads, and which were to be hauled over a part of the defendant's railroad for the transportation of the freight contained therein, in the due course of the defendant's business.   For the time being they were used in the defendant's business as a part of its rolling stock.   The fact that the defendant did not own them is immaterial.   The defendant was not bound to use them in its train if on inspection they were found to be unsafe.   We think cars so used must be deemed to be a part of the defendant's works and machinery.   *Coffee* v. *New York, New Haven, & Hartford Railroad*, 155 Mass. 21.   *Gottlieb* v. *New York, Lake Erie, & Western Railroad*, 100 N. Y. 462.   *Fay* v. *Minneapolis & St. Louis Railway*, 30 Minn. 231.

This is now so established by St. 1893, c. 359, passed since the plaintiff's cause of action arose.

We have then to consider whether there was any evidence for the jury of a defect in either car, which had not been discovered or remedied owing to the negligence of any person in the service of the defendant intrusted with the duty of seeing that the cars were in proper condition. It has heretofore been held by us that a drawbar of a locomotive engine, if placed too low, may be a defect. *Lawless* v. *Connecticut River Railroad,* 136 Mass. 1. In the present case the alleged defect is that there was an opportunity for too much lateral motion of the drawbars, and especially of the drawbar on the stationary car. The evidence of a defect in this particular certainly strikes us as slight, but too much space for play may be a defect, and we cannot say that it clearly appears, as matter of law, that there was no evidence for the jury.

If it is assumed that there was evidence for the jury of a defect, there was also evidence tending to show that the failure to discover or remedy it was negligence on the part of the defendant's inspectors of cars.

We cannot say that the plaintiff clearly appears to have brought the accident upon himself by his own carelessness, or that he must be held to have assumed the risk, or that he was not entitled to go to the jury on these questions.

Upon the second count, therefore, we think the plaintiff is entitled to a new trial.

Upon the third count there was no evidence for the jury, there being no evidence of negligence on the part of any superintendent or person exercising superintendence for the defendant.

*Verdict set aside as to second count.*