CHARLES DOLPHIN *vs.* CHARLES PLUMLEY & others.

Hampden.    January 17, 1900. — February 28, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Evidence — Trial.*

In an action for personal injuries sustained by the plaintiff while employed in the defendant's mill, if the plaintiff testifies that a certain passageway was not a safe and convenient way for use, and the defendant introduces evidence to the contrary, it is not open to the plaintiff to contend that such evidence should be limited to those witnesses who were present while he was employed in the mill, if there is no evidence of any change in the general conditions and character of the way from the time the machinery was placed in the mill to the time of the plaintiff's injury, which occurred within a few months afterwards.

If evidence on a question is in a case without objection, the judge is not bound to limit its effect to a question which is a different issue.

A party is not entitled to single out some of several disputed facts in a case and ask an instruction to the jury upon them.

A request for a ruling based upon a fact of which there is no evidence, or assuming a fact which is in dispute, is rightly refused.

TORT, for personal injuries sustained by the plaintiff while employed by the defendants in their sawmill.    After the former decision, reported 167 Mass. 167, the case was tried in the Superior Court before *Maynard, J.*

The jury returned a verdict for the defendants ; and the plaintiff alleged exceptions, which appear in the opinion.

*E. J. Tierney,* for the plaintiff.

*H. W. Ely & A. S. Kneil,* for the defendants.

LATHROP, J.    When this case was last before us, 167 Mass. 167, it was on the plaintiff's evidence alone.    We were then of opinion that the case should have been submitted to the jury. Since then the case has been tried again ; the jury returned a verdict for the defendants ; and the case comes befores us on the plaintiff's exceptions.    These disclose that on nearly every point the facts were in dispute.

According to the plaintiff's evidence he was injured while passing over a movable platform or apron, one purpose of which was to prevent splinters and chips thrown off by a circular saw from falling below and clogging the machinery ; and while so

crossing the apron it sank down a little, owing to its not having been properly replaced by one of the defendants, he fell, and his hand struck the saw. `According to the defendants' evidence, the plaintiff did not step upon the apron, but was attempting to assist one of the defendants who was putting a belt upon a pulley, and in doing so his left hand came in contact with the saw; and it was no part of his duty to assist in putting on the belt.

In our former opinion it was said, speaking of the plaintiff's testimony: " To pass in such close proximity to the saw was obviously dangerous, and if other ways had been provided, we should hesitate to reverse the ruling below." Accordingly at the last trial there was evidence introduced that there were other ways; one inside the mill, between one of the side walls and the carriage which carried the log, and the other by going outside of the mill.

1. The first exception of the plaintiff relates to the admission of the testimony of certain witnesses for the defendants as to the inside passage. The plaintiff had testified that this was not at any time a safe and reasonably convenient passageway for him or any one else to use, because of its narrowness and other conditions; and that no one could go through there without being injured. The defendant introduced several witnesses who testified that they experienced no difficulty in going through this passageway, and that the passageway was used. Some of these witnesses were not present while the plaintiff was employed in the mill; and the plaintiff contends that the inquiry should have been limited to those who were there when the plaintiff was. The answer to this contention is the following statement in the bill of exceptions: " There was no evidence that there had been any change in the general conditions and character of said space from the time the mill machinery was placed in the building to and after the time of the plaintiff's injury." There was also evidence that the log on the carriage when the plaintiff was injured was not an unusually large one.

Nor could the evidence admitted be said to be too remote in point of time. The mill was constructed in the fall of 1895, and put in operation in the fall or early in December of that year. The plaintiff assisted in setting the carriage of the mill,

worked there after it was in operation, and again from the second week in January to the time of his injury in March, 1896.

2. In respect to the platform by the saw, the plaintiff requested the judge to instruct the jury: "The testimony of witnesses that in their opinion this platform was not a proper means of passage, if of any bearing on the case, is merely on the question whether this platform was in fact used as a passageway."

This request seems to be based on a question and answer put to a witness, who was asked: "Is it proper within your knowledge and experience for these two screens and stepping over this mechanism, to be used as a passageway?" To this question the answer was: "No, sir, not unless a man wants to commit suicide." No objection or exception was taken to this question and answer at the time. The evidence being in the case without objection, we are of opinion that the judge was not bound to limit its effect to the question whether the platform was in fact used as a passageway, which was a different issue. See *Damon* v. *Carroll*, 163 Mass. 404.

3. Certain witnesses for the defendant were asked whether they had ever seen or known in similar mills the way over the screens to be used as a passageway, and answered in the negative. No objection was made or exception taken to the questions put to these witnesses or to their answers. The plaintiff requested the judge to instruct the jury as follows: "The testimony of witnesses that they have never known such a platform in other similar mills in general to be used as a passageway, if of any bearing on this case, is merely on the question whether this platform was in fact so used. If this platform was in fact so used, the plaintiff is not affected by what is or is not done in other mills." We are of opinion that this request was rightly refused for the reasons already stated.

4. The sixth request for instructions was as follows: "If this way across the platform or screen was used as a common passageway by the plaintiff and other workmen in the mill, to the knowledge of the defendant Plumley, and if the plaintiff by the use of due care could have walked across there without coming in contact with the saw, then if the plaintiff in the course of his duties attempted to walk across, and in so doing

used due care, and was thrown on the saw by the negligent act of the defendant Plumley, the defendants are liable, even if it should be found that there were other ways of passage which might at that time have been possibly used." We are of opinion that this request was rightly refused. The question was not whether the plaintiff and other workmen used the passageway to the knowledge of Plumley, but whether this was held out by the defendants or by Plumley as a passageway, and this question was left to the jury. So also full instructions were given to the jury as to what would constitute due care on the plaintiff's part. Every fact stated in the request was in dispute, and there were other facts bearing upon the question of due care on the part of the plaintiff and of negligence on the part of the defendants, which are not referred to in the request. It does not seem to us that the plaintiff had the right to single out some of these disputed facts and ask an instruction upon them.

5. The last request was as follows: " If the carriage might start at any moment with a sudden jerk and travel so fast as to go out and back within fifteen seconds, the plaintiff was not bound to climb over the carriage to reach any other passageway, and was not bound to walk in any passageway in which projections of the carriage came so close to a perpendicular wall against which the plaintiff must walk as to make reasonable danger that the plaintiff would be struck by any of said projections, in the rapid movement of the carriage above spoken of." This request was rightly refused. There was no evidence that the carriage was liable to start at any moment with a sudden jerk. The evidence was that the carriage was at rest, and that it would not start until the belt was put on and a lever pressed down by the sawyer, who was then putting on the belt. There was also no evidence that the plaintiff was obliged to climb over the carriage. He could have gone round to the end of it and entered the passageway. The latter part of the request is also objectionable. It assumes that the projections of the carriage came so near to the wall that the plaintiff could not walk there with safety. This was one of the questions in dispute, as the defendants introduced evidence tending to show that there was a clear space outside of all projections, wide enough to afford a safe and convenient passageway.     *Exceptions overruled.*