LAFAYETTE J. LADD *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.   November 13, 1906. — January 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.   Railroad.   Carrier,* Of goods.

It is the duty of a railroad company as a common carrier of goods to provide a safe and proper place for their delivery, and, if in transporting a car load of hay it chooses to deliver the hay from the car while standing on a track in its freight yard instead of unloading the car and delivering the hay at its freight house, it is bound to keep the car in a safe condition for the use of the persons employed by the owner of the hay to take it out.

If a railroad company receives a car belonging to another company loaded with goods for transportation over its road, and on the arrival of the car at its destination leaves it standing on a track in one of its freight yards and directs the owner of the goods to unload them from the car at that place, it has made the car one of its appliances for which it is responsible; and the fact that the car is the property of another is immaterial as affecting its duty to keep the car in a safe condition for the delivery of the goods.

In an action against a railroad company by a teamster sent by his employer, who had purchased a car load of hay, to help in unloading the hay from the car, and injured by a defective door of the car which fell upon the plaintiff as he was trying to open it, there was evidence that the car had been placed on a track in a freight yard of the defendant for the purpose of being unloaded by the purchaser of the hay who had been directed by the yard clerk of the defendant to unload it at that place, and that two or three days before the happening of the accident the plaintiff's employer went to the car to remove some of the hay and found that the door was defective, whereupon he notified the yard clerk that the car was in bad order. The defendant contended that the proximate cause of the accident was the negligence of the plaintiff's employer who, having full knowledge of the existing defect, sent the plaintiff to unload hay from the car and failed to give him any warning in regard to it. *Held*, that, apart from the question whether the defect in the car was a latent one or whether it could have been discovered by a proper inspection, as to which no opinion was expressed, there was evidence warranting a finding that the defendant's yard clerk after due notice from the plaintiff's employer failed to make any proper examination of the car or the door, and that the defendant was negligent in not having remedied the defect or having done something to guard against injury resulting from its existence, there having been other evidence in the case from which the jury might have found, irrespective of the notice from the plaintiff's employer, that the defendant had had a sufficient opportunity to discover and remedy the defect or to guard against injurious consequences resulting from it before using the car as a place of delivery; and that, the defendant having invited the plaintiff's employer and the plaintiff as his employee to come to the car to remove the hay therefrom, the plaintiff's employer owed no duty to the defendant to warn the plaintiff of the danger to be apprehended if, as turned out to be the case, the defendant should neglect to repair the defect to which he had called the attention of its servant.

TORT by a teamster in the employ of one Robinson for injuries from a defective door of a car standing on a track in a freight yard of the defendant in that part of Boston called South Boston falling upon the plaintiff, when the plaintiff with one Harris had been sent with a team by Robinson to complete the unloading of hay from the car and was helping to open the door of the car for that purpose. Writ in the Municipal Court of the City of Boston dated November 9, 1904.

On appeal to the Superior Court the case was tried before *Maynard*, J. It appeared that the car in question belonged to the Lehigh Valley Railroad Company and was received from that company by the defendant in the city of New York loaded with hay consigned to one Bates of Boston, who sold the hay to Robinson. On the arrival of the car in Boston it was placed in the defendant's yard No. 5, and six days later at the request of Robinson was shifted from that yard to yard No. 3 where it

was placed on track 12.  Two or three days before the accident, Robinson with the plaintiff and Harris went to the yard with teams to take the hay from the car.  There Robinson, as was the custom of the yard, called upon one Sullivan, the yard clerk of the defendant, and was directed by him to the place where the car stood.  Robinson at that time found that the door was defective and in opening it got under the door to steady it so that it would not fall on him.  On leaving, he notified Sullivan that the car was in bad order.  Harris testified that on the day of the accident he was sent for hay; that he backed the team to the door and used the hook to start the door; that the plaintiff was on the ground and took hold of the handle of the door and pulled and the door fell on top of him; that he, Harris, only started the door and that it went freely when once started.

At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*F. E. Shurtleff*, for the plaintiff.

*F. W. Knowlton*, for the defendant.

SHELDON, J.  In our opinion the jury might have found upon the evidence that upon the arrival of the car in Boston the defendant, instead of unloading the car and delivering the hay at its freight house, chose to make delivery from the car itself, and that this was the reason for the defendant's keeping the car unloaded in one of its yards for six days before shifting it, at the request of Robinson, the purchaser of the hay and the employer of the plaintiff, into another place.  If the jury found that this was the fact, then the defendant, by adopting the car as the store house from which Robinson was to take the hay, invited him and his men to come thither and there unload the hay.  It made the car its temporary freight house, which, so far at any rate as could be accomplished by the exercise of ordinary care, it was bound to keep in a safe condition for the use of those men who should properly come to take out the hay which it contained.  *Bachant* v. *Boston & Maine Railroad*, 187 Mass. 392.  *Foster* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 21.  As was said by Braley, J., in *Bachant* v. *Boston & Maine Railroad, ubi supra*, " under its contract as a common carrier the defendant was required to provide a safe and proper place for delivery."

It is not material that this car was, as in *Foster* v. *New York, New Haven, & Hartford Railroad, ubi supra,* the property of another.  By adopting and using it for its own purposes, as might have been found to be the fact, the defendant had made it one of its own appliances, of which it had assumed full control and for which it was responsible as for its own property. *Bowers* v. *Connecticut River Railroad,* 162 Mass. 312.  *Fletcher* v. *Boston & Maine Railroad,* 1 Allen, 9.  *Schopman* v. *Boston & Worcester Railroad,* 9 Cush. 24.  *Cotant* v. *Boone Suburban Railway,* 125 Iowa, 46.  *Combe* v. *London & South-Western Railway,* 31 L. T. (N. S.) 613.  It was the defendant and not the general owner of the car that furnished this car to Robinson's men, including the plaintiff, and that was responsible for its condition. *Hale* v. *New York, New Haven, & Hartford Railway,* 190 Mass. 84.  *Glynn* v. *Central Railroad,* 175 Mass. 510.  *Spaulding* v. *Flynt Granite Co.* 159 Mass. 587.  The car had passed out of the control of its general owner, and the defendant was using it for its own purposes.  *Caledonian Railway* v. *Mulholland,* [1898] A. C. 216.  The cases which consider the rule that, as to cars which one railroad company receives from another for transportation over its line, it owes no other duty to its employees than that of providing a sufficient number of competent inspectors, have no application to this case, and need not be referred to.

There was also evidence that the defendant had been negligent in the performance of its duty.  Entirely apart from the question whether the defect in this car was a latent defect or whether it could have been discovered by a proper inspection, as to which we express no opinion, there was evidence that two or three days before the happening of the accident the plaintiff's employer had notified Sullivan, one of the defendant's servants, that the door of this car was in bad condition, but that nothing was done by the defendant to remedy the defect until after the accident; and the jury might have found that Sullivan, after due notice by the plaintiff's employer, failed to make any proper examination of the car or the door.  In view of the duty resting upon the defendant which already has been stated, we are of opinion that the jury might have found that it was guilty of negligence in not having discovered the defect and either reme-

died it or done something to guard against injury resulting from its existence. And there was other evidence from which the jury might have found, irrespective of the notice received as aforesaid, that the defendant had had sufficient opportunity to discover and remedy the defect or to guard against injurious consequences resulting from it, before electing to use it as a place of delivery.

The defendant does not deny that there was evidence for the jury that the plaintiff was in the exercise of due care; but it strenuously contends that, even if negligence of the defendant had been found, yet that negligence was not the direct and proximate cause of the plaintiff's injury. It relies upon the well settled doctrine that although its own negligent failure to discover and remedy the defect in this car may have been the original cause without which the injury to the plaintiff would not have happened, yet if between its own negligence and the plaintiff's injury there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff, then the defendant cannot be held liable. It is true that the general rule is to look no further back than to the last wrongdoer, especially when he has had complete and intelligent control of the consequences of the earlier wrongful or negligent acts. *Murray* v. *Boston Ice Co.* 180 Mass. 165. *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536. And see the cases cited in these opinions. The defendant contends that the injury to the plaintiff is due directly to the negligence of Robinson his employer in putting the plaintiff to work upon this car, having himself a full knowledge of the existing defect and danger, and failing to give to the plaintiff any warning thereof. *Spaulding* v. *Flynt Granite Co.* 159 Mass. 587. But this argument overlooks the fact which, as we have seen, the jury might have found, that the defendant had itself invited not only Robinson but his men, including the plaintiff, to come to this car and remove the hay therefrom. In this respect the case resembles *Heaven* v. *Pender,* 11 Q. B. D. 503, and *Robertson* v. *Boston & Albany Railroad,* 160 Mass. 191, 193. Robinson owed no duty

to the defendant to warn his servants of the danger to be apprehended if, as turned out to be the case, it should neglect to repair the defective condition to which he had called the attention of its servant. *Poor* v. *Sears*, 154 Mass. 539, 549. Robinson's original duty to the plaintiff was no greater than was found in *Dunn* v. *Boston & Northern Street Railway*, 189 Mass. 62. So far as it may have been increased by his actual knowledge of the existence of the defect and danger, this must be considered in connection with the notice which he had given to the defendant and the opportunity which the defendant had had to make proper repairs. The jury might have found that the defendant's negligence continued up to the time of the injury to the plaintiff, and that the defendant was itself the last wrongdoer both in point of time and in the chain of causation.

In our opinion, the case should have been submitted to the jury.

*Exceptions sustained.*