ANNIE PEARLSTEIN, administratrix, *vs.* NEW YORK, NEW HAVEN, & HARTFORD RAILROAD COMPANY.

Barnstable.      January 17, 1908. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Gross, Causing death.

At the trial of an action of tort under R. L. c. 111, § 267, brought against a corporation operating a railroad by the administrator of one whose death was alleged to have been caused by reason of gross negligence of the defendant's employees, the testimony of one of the plaintiff's witnesses tended to show that the plaintiff's intestate had brought a heavy machine to a freight agent of the defendant for shipment, that the freight agent directed him to load it on to a car, and that he and other employees of the defendant and the witness helped the plaintiff to do so, that one employee of the defendant was inside of the car with a rope attached to the machine upon which he was directed to pull in order to steady the machine as it stood upon rollers or skids running to the car from the wagon from which it was being unloaded, that he started to jump and dance and whistle, and immediately the machine fell. *Held,* that there was evidence which would warrant the jury in finding that the death of the plaintiff's intestate resulted from gross negligence of an employee of the defendant.

TORT under R. L. c. 111, § 267, to recover for the death of the plaintiff's intestate alleged to have been caused by gross negligence on the part of a servant of the defendant. Writ in the Superior Court for the county of Barnstable dated March 8, 1905.

There had been a previous trial of the case at which the jury returned a verdict for the plaintiff. Exceptions taken by the defendant at that trial were sustained by this court in a decision reported in 192 Mass. 20. According to the bill of exceptions before this court at that time, the witness Yelkin, mentioned in the opinion, had testified in direct examination that the plaintiff's intestate, for whom he worked, brought a heavy machine to the freight agent of the defendant at West Barnstable to be shipped to Boston, that, under directions of the freight agent, they attempted to load the machine into a car with the assistance of an employee of the defendant named Cook, Cook standing in the car and pulling on a rope attached to the machine to steady it as it stood upon rollers or skids running to the car from the wagon from which it was being unloaded, that Cook "started to jump, and dance and whistle, and stopped pulling the machine," and Yelkin told him not to play with the rope, but to "keep the rope good," that "for three or four minutes the machine went, and then it fell down." "After I said 'Stop, John,' I started moving the machine and the next thing that happened, the machine fell." And that in cross-examination he testified as follows: "Q. And what did he do then, when you said 'Stop, John,' did he stop? A. He stopped this time."

There was a retrial of the case before *Fessenden,* J. The evidence introduced on behalf of the plaintiff, excepting the testimony of Yelkin, was substantially the same as that reported in the bill of exceptions when the case was before this court before. Yelkin's testimony with regard to the conduct of Cook was, in direct examination, as follows: "Cook held the rope and started dancing and whistling, the rollers were not under the machine, and he jerked the rope like that [indicating]. I say, 'John, stop whistling and dance and hold the rope pretty good.' Well, we started moving the machine from the tipcart about a few inches and they started fixing the rollers,. Hiller [the freight agent] did, and then Cook started to whistle and dance, and we started the machine and gone four or five inches this time and I said 'You keep still your whistle and dance.' Just before the machine fell he started to whistle and dance and jerk the rope. The machine fell right off." In cross-

examination, on the same subject, he testified: " The machine was still in the tipcart and Cook was in the car holding the rope and started to dance and whistle and jerked the rope. I said ' Stop John. Hold the rope good,' and he stopped this time. Then Hiller lifted up the machine to put the rollers under. Then the machine was moved along a little bit, and Cook started again to whistle and dance and jerk the rope. I spoke to Cook and told him to stop and hold the rope good, and he stopped. He think it was funny. Hiller put the second roller under the machine. Pearlstein was standing back of me on the one side, and Hiller and Crocker on the other, Cook was standing in the car with the rope. The rope was not round an iron rod, Cook held it in his hand. There was no pushing this time because Hiller was putting the rollers underneath the machine and I was holding it on one side. We now had two rollers under the machine and I was pushing; the machine had two pieces of joist on each side fastened on each leg, a little wider than the skids about five or six inches. The machine was about five or six inches wider than the skids. We had been working on the machine five or six minutes before we got it two feet out of the cart. Hiller kept fixing the rollers until finally the machine was entirely out of the cart and was on the skids and it was on even and Cook was holding the rope. . . . We started moving the machine just a little bit, four or five inches, and it moved a little, and he began to whistle and dance, and I said ' Keep still and hold the rope' and by this time the machine came down." In re-direct examination he stated: Q. " Just before the machine fell what was Cook doing? " A. " He was dancing and whistling and jerking the rope." — Q. " Just before the machine fell what was he doing with the rope ? " A. " He was starting to dance and whistle and jerking the rope. I told him ' Keep still, John. You hold the rope and stop your whistle and dance,' and this time fell the machine."

The presiding judge refused to direct a verdict for the defendant and also refused to rule that there was no evidence for the jury of gross negligence on the part of Cook, there was a verdict for the plaintiff, and the defendant alleged exceptions.

*R. A. Hopkins*, for the defendant.

*L. Bryant*, (*H. M. Hutchings* with him,) for the plaintiff.

KNOWLTON, C. J.   This case has once before been considered by this court, and it was reported in 192 Mass. 20.   The only question now presented which is not covered by the former decision is whether there was evidence to warrant a finding that Cook, one of the defendant's servants, was grossly negligent, and that his negligence caused the accident.   Upon the evidence at the first trial it was held that the testimony would warrant a finding that he was negligent, but not a finding that he was grossly negligent.   There was much conflict of evidence, and the plaintiff's case on this point rests almost entirely upon the testimony of Yelkin.   He said that Cook held the rope, and started dancing and whistling, and jerked the rope.   He added: " Just before the machine fell he started to whistle and dance, and jerked the rope.   The machine fell right off."   He gave this testimony in a variety of forms, in connection with his description and that of others as to how the machine fell.   Notwithstanding the contradiction of him, and the seeming improbability of a part of his testimony, which was materially different from that at the former trial as it appears in the bill of exceptions on which the former decision was made, we are of opinion that it was a question for the jury whether Cook was grossly negligent.   *Hartford* v. *New York, New Haven, & Hartford Railroad*, 184 Mass. 365.   *Evenson* v. *Lexington Street Railway*, 187 Mass. 77.   *Gordon* v. *West End Street Railway*, 175 Mass. 181.

*Exceptions overruled.*