MARY E. McNAMARA, administratrix, vs. BOSTON AND
MAINE RAILROAD.

SAME vs. SAME.

SAME vs. CENTRAL VERMONT RAILWAY COMPANY.

SAME vs. SAME.

Middlesex. March 3, 1909. — June 22, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY,
SHELDON, & RUGG, JJ.

*Negligence*, Railroad, Defective car of company other than defendant, Gross, Causing
death, *Res ipsa loquitur*. *Evidence*, Presumptions and burden of proof. *Estoppel*.

Where one railroad company has the possession and control of and is using in its
own business and for its own purposes as a part of one of its trains a freight car
owned by another company, its duty to strangers is not discharged merely by
establishing an adequate system of inspection and by providing a sufficient
number of competent inspectors, but it is under the same liability as if it were
itself the owner of the car.

It is the ordinary experience of mankind that the top roof of a railroad car will not
blow off even in a high wind if the car is in good condition and in a proper state
of repair and, if the roof of such a car does blow off in a high wind while the
car is in the possession and control of and is being used by a railroad company,
which is not its owner, for its own purposes and as a part of one of its own
trains, and a person, not a passenger, rightly in the neighborhood is injured
thereby, it well may be inferred in the absence of explanation that the accident
was due to the negligence of such railroad company.

The mere fact that, at the trial of an action of tort for personal injuries alleged to
have been caused by reason of negligence of the defendant, both the plaintiff
and the defendant offer evidence in attempted explanation of the accident,
does not preclude the jury, in case they find that no satisfactory explanation
has been given, from finding negligence of the defendant from the mere
happening of the accident if it was one which was caused by instrumentalities
in the control of the defendant at the time and which in the ordinary experience
of mankind would not have happened if such instrumentalities had been in good
condition and in a proper state of repair.

At the trial of an action under R. L. c. 171, § 2, against a railroad company by the
administrator of one who, while in the exercise of due care, was killed by being
struck by the roof blown from a freight car in a high wind, it appeared that the
car was owned by a railroad company other than the defendant and that at the
time of the accident it was in the possession and control of the defendant and
was being used by it on its own business and as a part of one of its own trains;
and there was evidence tending to show that a fascia board was broken off from
the roof and that the roof was in such condition that wind could get between it
and a metallic roof immediately beneath it, that such a condition was a generally

recognized source of danger, that the roof which blew off had been loose fifteen minutes before the accident and in such a condition as to call for an examination while the car was being shunted about, that an examination of the roof was made by employees of the defendant, who found no defect therein, that the wind at the time was blowing fifty miles an hour, and that a proper examination of the car and its roof would have disclosed the imminent danger, with the existing wind, of just such an occurrence as did take place. *Held*, that there was evidence, not only of want of ordinary care on the part of the employees of the defendant who inspected the car and permitted it to continue unrepaired, but also of gross negligence on their part.

The doctrine of *res ipsa loquitur* is to be applied only against a party who by himself or his servants had at the time of the accident in question the control and management of the appliance or instrumentality whose failure or defective condition was the cause of the accident.

Where a railroad company delivers a freight car of which it is the owner to another railroad company which is to deliver the car to a third company in the course of transporting freight, and, after the car has completed its journey, it again comes into the possession of the second company, which without authority from the owner uses it in its own business and as a part of one of its own trains, the company which owns the car is not liable, either solely or jointly with the company in whose possession the car is, to a stranger who is injured by reason of a defect or want of repair therein, whether such defect or want of repair is hidden or obvious.

FOUR ACTIONS OF TORT to recover for personal injuries to and the death of the plaintiff's intestate caused by the roof of a freight car blowing upon him as stated in the opinion. Writs dated June 28, 1907.

The cases were tried together before *Lawton*, J. At the close of the plaintiff's evidence, the defendant Central Vermont Railway Company rested in the two cases in which it was defendant, the presiding judge ordered verdicts in its favor; and the plaintiff alleged exceptions.

At the close of all the evidence, the defendant Boston and Maine Railroad asked the presiding judge to rule in the two cases in which it was defendant as follows:

" 1. There is not sufficient evidence to warrant a verdict for the plaintiff [in either case]. . . .

" 3. There is not sufficient evidence to warrant a finding of gross negligence of the defendant's agents or servants. . . .

" 6. If the jury find that the roof blew off because it was not securely fastened to the car and that the condition of the roof in this respect could not have been discovered by inspection, the defendant is not liable [in either case]. . . .

" 9. If the jury find that at the time of the inspection of the

car any portion of the fascia board was missing and that there was a faulty construction of the roof which could not have been discovered by inspection and that the blowing off of the roof was caused by the combination of the missing portion of the fascia board and the faulty construction, the plaintiff cannot recover [in either case].

"10. Under the circumstances stated in the last request, the defendant's inspectors would not have notice that the loss of the fascia board would make it possible that the roof could be blown off and they would not be grossly negligent in allowing the car to proceed without being repaired."

The presiding judge refused so to rule, and in his charge instructed the jury as to the doctrine of *res ipsa loquitur* as stated in the opinion. The jury found for the plaintiff in the first two cases; and the defendant Boston and Maine Railroad excepted.

The case was argued at the bar in March, 1909, before *Knowlton*, C. J., *Hammond*, *Loring*, *Sheldon*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*F. N. Wier*, (*L. T. Trull* with him,) for the Boston and Maine Railroad.

*E. R. Thayer*, (*H. S. Davis* with him,) for the Central Vermont Railway Company.

*A. J. Daly*, for the plaintiff.

SHELDON, J. In the first of these cases the plaintiff seeks to hold the defendant for the conscious suffering, and in the second for the death, of Michael McNamara, her intestate. His injuries and consequent death were caused by the fact that the roof of a freight car in a train of the defendant was blown from the car and fell upon him. It was not disputed that he was in the exercise of due care in the performance of his duties as a servant of the New York Central Railroad Company. The car belonged to the Central Vermont Railway Company. It had been delivered by that company to the defendant at White River Junction, Vermont, on April 7, 1907; and the defendant had transported it over its lines to Lowell, and there delivered it to the New York, New Haven, and Hartford Railroad Company. Thereafter, on April 23, the defendant received this car at Boston from the Union Freight Railroad Company; and on the next day, April 24, when this accident happened, the defendant had the car in

its possession and control and was using it in the defendant's business, transporting the car over one of its lines and as a part of one of its trains. The defendant put in evidence as to its inspection of this car and as to its system of inspection, and other evidence from which the jury might have found that the blowing off of the roof was due to a faulty construction and a defective condition which were not discovered by its inspectors and were not to be discovered by any proper and reasonable inspection. The first two cases were submitted to the jury, which found for the plaintiff, and they now come before us upon the defendant's exceptions. In the third and fourth cases, the defendant rested at the end of the plaintiff's testimony; at its request a verdict was ordered in its favor; and the plaintiff excepted.

1. In the first case the defendant's contention is that the judge should have ruled that there was not sufficient evidence to warrant a verdict for the plaintiff, and that there was error in the judge's statement that the happening of this accident, if unexplained, was some evidence of negligence. The other exceptions in this case are waived.

The fundamental proposition contended for in the able argument of the defendant's counsel is that it was not responsible for any defects in this car which were not to be discovered by ordinary inspection. It claims the benefit of the well recognized rule that as to the cars of other companies which it receives in the regular course of business for transportation over its road, it owes at common law to its own employees no other duty than that of having them inspected by competent and suitable inspectors, acting under a proper system and under proper superintendence, and that it may properly receive from other companies all cars which, upon such inspection, appear to be in a reasonably safe condition. *Bowers* v. *Connecticut River Railroad,* 162 Mass. 312. *Thyng* v. *Fitchburg Railroad,* 156 Mass. 13, 16. *Mackin* v. *Boston & Albany Railroad,* 135 Mass. 201. *Ballou* v. *Chicago, Milwaukee & St. Paul Railroad,* 54 Wis. 257. *Gutridge* v. *Missouri Pacific Railroad,* 94 Mo. 468. But this contention does not appear to be supported by the evidence. If it may be inferred that the defendant's original reception of this car from its owner was for the purpose of transportation and delivery to

a connecting line, yet the purpose of this bailment apparently had been completed and the car had been returned to the defendant. There is nothing in the bill of exceptions to indicate that it was for the purpose of completing any transportation initiated by the owner of this car that the car was delivered by the Union Freight Railroad Company to the defendant. The plaintiff's evidence, it is stated in the exceptions, tended to show that the defendant at the time of the accident not only had the car in its possession and control, but was using the car in its own business. The evidence of the defendant that it had inspected the car with the same system that it used both upon its own cars and upon those owned by other railroads had no tendency to control this evidence. We are of opinion that the defendant must be regarded, or at least might have been regarded, as having adopted this car as a part of its own equipment and one of its instrumentalities. But if this is so, its duty to strangers could not be discharged by merely establishing an adequate system of inspection and providing a sufficient number of competent inspectors. It would be subject to the same liability as if it were itself the owner of the car. *Beattie* v. *Boston Elevated Railway*, 201 Mass. 3. *Ladd* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 359, 361, 362, and cases cited.

But even if the defendant could be treated as having merely received this car from a connecting line for further transportation over a continuous route, yet, as the plaintiff was not its servant, it would be responsible to him for any negligence of its inspectors. This is the doctrine of *Littlejohn* v. *Fitchburg Railroad*, 148 Mass. 478. But there was evidence here that proper inspection would have discovered the loose and dangerous condition of this roof; and although the defendant's evidence contradicted this, the question would be one for the jury, as in *Lutolf* v. *United Electric Light Co.* 184 Mass. 53, 57.

We think it plain that in this case a verdict could not have been ordered for the defendant, but that the question of liability was for the jury.

Nor can it be affirmed that there was error in what was said by the judge at the trial as to the happening of an accident like this, if unexplained, furnishing some evidence of negligence. It is the ordinary experience of mankind that the top roof of a

railroad car will not blow off, even in a high wind, if it is in good condition and in a proper state of repair. But the general rule is that the mere happening of an accident, if it is one that commonly would not happen where due care was used, is some evidence of negligence, on the ground that the accident would not otherwise have happened. *James* v. *Boston Elevated Railway*, 201 Mass. 263. *Beattie* v. *Boston Elevated Railway*, 201 Mass. 3. *Minihan* v. *Boston Elevated Railway*, 197 Mass. 367. *Hebblethwaite* v. *Old Colony Street Railway*, 192 Mass. 295. *Savage* v. *Marlborough Street Railway*, 186 Mass. 203. *Graham* v. *Badger*, 164 Mass. 42. And where, in addition to this, the instrumentality which causes the accident is shown to have been at the time under the control and management of the defendant, it well may be inferred, in the absence of explanation, that the accident was due to his negligence. *Magee* v. *New York, New Haven, & Hartford Railroad*, 195 Mass. 111. *Scott* v. *London Dock Co.* 3 H. & C. 596.

The fact that this car was the property of another company does not prevent the application of the rule stated. It was in the possession and under the control of the defendant, and used by the defendant for its own purposes. *Beattie* v. *Boston Elevated Railway*, 201 Mass. 3. *Ladd* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 359. *Hale* v. *New York, New Haven, & Hartford Railroad*, 190 Mass. 84. *Foster* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 21. *Spaulding* v. *Flynt Granite Co.* 159 Mass. 587. Although it was agreed that this was a foreign car, yet it was contended that the defendant was liable for it as for one of its own. It is not too much to say that *prima facie* there was a duty upon the defendant to see that the roofs of cars in its own trains should not blow off to the injury of people rightly in the neighborhood, like the duty to see to it that their trains did not come apart while in motion. *Thyng* v. *Fitchburg Railroad*, 156 Mass. 13, 19. But this matter already has been sufficiently considered.

The fact that both the plaintiff and the defendant introduced evidence to show just what was the cause of the blowing off of this top roof was properly called to the attention of the jury. They were told that if the accident was explained, if they were satisfied as to its cause, then they must take all the facts and

say whether or not negligence of the defendant was proved. But they rightly were told also that if they found no explanation of the accident, then it stood as unexplained, and furnished some evidence of negligence.  The mere fact that either party or both parties had attempted to explain the occurrence and had failed in that attempt would not prevent the application of the doctrine of *res ipsa loquitur*.  As was said in *Cassady* v. *Old Colony Street Railway*, 184 Mass. 156, 163, " An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumptions applicable to it."  *Sullivan* v. *Rowe*, 194 Mass. 500.  There is nothing in *Galligan* v. *Old Colony Street Railway*, 182 Mass. 211, *Parsons* v. *Hecla Iron Works*, 186 Mass. 221, 223, 224, and similar cases, which is at all inconsistent with this well settled doctrine.

2. In the second action, brought to recover for the death of the plaintiff's intestate, it is not necessary to say anything more upon the defendant's exception to what was said by the court as to the happening of the accident, if unexplained, furnishing some evidence of negligence.  The most important question is whether there was sufficient evidence to warrant a finding of gross negligence of the defendant's agents or servants, or whether a verdict should have been ordered for the defendant. These questions, and the refusal of the presiding judge to give the defendant's ninth and tenth requests for instructions, are all that now need be considered.

The defendant's counsel have earnestly argued that even on the doctrine of *res ipsa loquitur*, gross negligence could not be inferred from the mere happening of the accident.  But no such ruling was made by the judge.  He carefully and plainly distinguished gross negligence from ordinary negligence, and allowed the plaintiff to recover upon this ground only if it was found that the defendant's inspectors had not merely failed to use ordinary care in examining this car, but that they had been grossly negligent.  The only question as to this part of the case is whether there was evidence upon this issue for the jury.  We are of opinion that there was such evidence.  The jury could find upon the testimony put in by the plaintiff that this top roof was in such condition that wind could get in between it and the

metallic roof, and with more force when, as here, the fascia boards were broken off; that this was a generally recognized source of danger to the roof; that the top roof was loose, and in such a condition as to call for examination while the car was being shunted; that when it was examined by the defendant's inspectors, about fifteen minutes before the accident, there was a very high wind, about fifty miles an hour; and that the circumstances were such that a proper examination would have disclosed the imminent danger, with the existing wind, of just such an occurrence as did take place.*    The fact that this state of affairs was controverted by the defendant made it none the less a question for the jury.    And in view of the danger to life and limb, both to the defendant's own servants and to strangers in such a position as that of the plaintiff's intestate, a majority of the court are of opinion that the jury were warranted in saying that this showed gross negligence on the part of the inspectors.    *Mullins* v. *New York, New Haven, & Hartford Railroad,* 201 Mass. 38.    *Pearlstein* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 578.    *Spooner* v. *Old Colony Street Railway,* 190 Mass. 132.    *Evensen* v. *Lexington & Boston Street Railway,* 187 Mass. 77.    *Hartford* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 365, 368.

The judge also left it to the jury to say whether the defendant itself had been guilty of negligence as to its system of inspection; but no specific exception was taken to this, and we need not consider the evidence that bore upon this question.

The defendant's ninth and tenth requests were refused rightly. It was a question of fact whether the loss of the missing part of the fascia board, under the existing conditions of the weather, and in connection with what else ought to have been discovered upon proper inspection, would be likely to involve danger of the blowing off of the top roof of the car; and it was for the jury to say whether the defendant's inspectors were grossly negligent in allowing the car to proceed without having been repaired.    Moreover the judge could not be required to rule upon the effect of specific

---

* There was evidence that the car was inspected by three inspectors in the employ of the defendant, and that they "upon inspection found no defect in the roof or anything connected therewith."

parts of the evidence thus singled out from the rest.   *Dolphin* v. *Plumley*, 175 Mass. 304.   *Moseley* v. *Washburn*, 167 Mass. 345, 362.

It follows that the defendant's exceptions in the first two cases must be overruled, and it is

*So ordered.*

3. In the third and fourth cases, the defendant rested at the end of the plaintiff's case, and the considerable body of evidence afterwards introduced by the Boston and Maine Railroad cannot be considered.   Under these circumstances, many of the questions discussed by counsel in their elaborate arguments do not properly arise.

The occurrence of the accident raised no presumption against this defendant because the car was not at the time in its possession or control ; and the doctrine of *res ipsa loquitur* is to be applied only against a party who by himself or his servants had at the time the control and management of the appliance or instrumentality whose failure or defective condition was the cause of the accident.   *Kendall* v. *Boston*, 118 Mass. 234, 236.   *Wolf* v. *American Tract Society*, 164 N. Y. 30.   *Schaller* v. *Independent Brewing Association*, 225 Ill. 492.   *Johnson* v. *Walsh*, 83 Minn. 74.   *Higgs* v. *Maynard*, Harr. & Ruth. 581.

The defendant cannot be held on the ground that the cause of the accident was a secret defect in the car which might have been found to have been known to the defendant, and that the defendant with such knowledge delivered the car to the Boston and Maine Railroad for transportation over its lines.   *Louisville, New Albany & Chicago Railroad* v. *Bates*, 146 Ind. 564.   *Moon* v. *Northern Pacific Railroad*, 46 Minn. 106.   As the plaintiff left the cases against this defendant, the purposes of its delivery to the Boston and Maine Railroad had been completed, and the latter road was using the car for its own purposes and against the rights of this defendant, as in *Sawyer* v. *Minneapolis & St. Louis Railroad*, 38 Minn. 103.   The defendant had not authorized the use which was being made of this car, and cases like *Jackman* v. *Arlington Mills*, 137 Mass. 277, and *Dalay* v. *Savage*, 145 Mass. 38, are not applicable.   This case therefore does not present the question considered in the cases from Indiana and Minnesota above referred to, as to which there has been considerable variety of decision.   See, besides cases already cited, *Glynn*

v. *Central Railroad,* 175 Mass. 510 ; *Wright* v. *Delaware & Hudson Canal Co.* 40 Hun, 343 ; *Fowles* v. *Briggs,* 116 Mich. 425 ; *Chicago, St. Louis & Pittsburgh Railroad* v. *Fry,* 131 Ind. 319 ; *Missouri, Kansas & Texas Railway* v. *Merrill,* 65 Kans. 436, overruling *S. C.* 61 Kans. 671 ; and *Caledonian Railway* v. *Mulholland,* [1898] A. C. 216. Analogous questions were discussed, sometimes with much elaboration, in *Farrell* v. *Manhattan Market Co.* 198 Mass. 271 ; *Coman* v. *Alles,* 198 Mass. 99, 103 ; *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341 ; *Bishop* v. *Weber,* 139 Mass. 411 ; *Heizer* v. *Kingsland & Douglass Manuf. Co.* 110 Mo. 605, 614 ; *Earl* v. *Lubbock,* [1905] 1 K. B. 253 ; *Heaven* v. *Pender,* 11 Q. B. D. 503 ; *Collis* v. *Selden,* L. R. 3 C. P. 495, and *Winterbottom* v. *Wright,* 10 M. & W. 109.

Nor could this defendant be found to be jointly liable with the Boston and Maine Railroad, on the ground stated in *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575, 581. There was here no concurrent negligence of the two railroad corporations ; the proximate cause of the injury and death of the plaintiff's intestate, as the case was left by the plaintiff's evidence, was the negligence of the Boston and Maine Railroad, for which this defendant was in no way liable.

No cause of action was shown against this defendant ; and in each case the order must be

*Exceptions overruled.*