JOSEPH J. KNYCH *vs.* TRUSTEES OF NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

Worcester.    September 23, 1946. — November 2, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Negligence,* Railroad: defective car; Res ipsa loquitur. *Evidence,* Foreign law.

An original examination by this court of the law of New York respecting
questions presented in an action at common law brought in this Commonwealth was not required by G. L. (Ter. Ed.) c. 233, § 70, where
it did not appear that such law was in any way brought to the attention of the trial judge and it was not the subject of argument in this
court; for the purposes of the case, it must be assumed that the
common law of New York was the same as that of Massachusetts.

At the trial of an action by a passenger against a railroad corporation
for personal injuries sustained while the plaintiff was passing through
a vestibule between cars in motion, evidence that his foot was caught
between buffer plates which formed part of the mechanism joining
the cars and were in the exclusive control of the defendant, and which
had become separated in a way not consistent with proper operation
of the joining mechanism and not likely to occur without negligence
in the construction, repair or inspection of the cars, required submission of the question of the defendant's negligence to the jury, although
there was no evidence as to how long such condition had existed,
whether the cars belonged to the defendant, or, if they did not so
belong, how long they had been in the defendant's possession.

TORT.    Writ in the Superior Court dated December 13,
1943.

The case was tried before *Forte,* J.

*F. P. Ryan,* for the plaintiff.

*N. W. Deering,* for the defendants.

QUA, J.    This is an action for personal injury suffered
by the plaintiff while a passenger in one of the defendants'
trains within the limits of New York city on August 28,
1943.    The trial judge directed a verdict for the defendants
on each count.    The plaintiff excepts.

Although the accident occurred within the State of New
York, it does not appear that the law of New York was in

any way brought to the attention of the trial judge, and it has not been argued here.   Therefore G. L. (Ter. Ed.). c. 233, § 70, does not require us to undertake an original examination of that law, and, the action being at common law, we must assume that the common law of New York is the same as our own.   *Lennon* v. *Cohen*, 264 Mass. 414, 420–422.   *Seemann* v. *Eneix*, 272 Mass. 189, 195–196. *McDuffee* v. *Kelsey*, 312 Mass. 458, 460.

The plaintiff having occasion to pass from one car to the next, while going through the vestibules, caught his foot in some manner between certain of the attachments pertaining to the two cars at the point of junction between them.   The train had come from Portland, Maine, and had been operated by the Boston and Maine Railroad as far as Worcester in this Commonwealth, where it was taken over by the defendants.   The plaintiff boarded the train at Worcester at 2:15 A.M.   It was due in New York about 7:30.   The accident occurred as the train was nearing the 125th Street station, where it came to a stop.   When it started up again the pull upon the coupling released the plaintiff's foot. Evidence in behalf of the defendants tended to show that both of the cars involved belonged to the Boston and Maine Railroad, but the plaintiff was not bound by this.   There was, however, no other evidence as to the ownership of either car.

There was evidence from both sides as to the nature of the coupling mechanism.   In general this evidence tended to show that the draw bars which actually pull the cars are located under the vestibules and are so constructed as to permit them, even when connected together, to move slightly forward and backward to relieve strain in starting and stopping and at other times.   Above the draw bars are the buffer plates, one attached to each car.   These have a vertical face and a horizontal or flat top.   These also are free to move together backward and forward to a certain extent, but the vertical faces are always kept in close contact by means of springs which maintain a constant horizontal tension, so that if the draw bars are stretched out the buffer plates will nevertheless remain in contact, and

their flat top surfaces, located at practically the height of the vestibule floors, will maintain a continuous almost level passageway the width of the opening from one car to the other. Immediately above the buffer plates are the cover plates. These are thin, flat, horizontal plates, one of which projects from the floor of each vestibule immediately above the top of the adjoining buffer plate of the same car. The cover plates are rigidly attached to the vestibule floors of which they are practically continuations. They serve as covers for parts of the tops of the movable buffer plates, but being rigidly attached to the floors, they cannot wholly cover the tops of the buffer plates, since if they did they would crash together as the draw bars below stretch and contract. Some portion of each buffer plate must remain uncovered and visible. As we understand the evidence, the edges of the cover plates will approach each other slightly or will recede slightly as the draw bars below are compressed or stretched.

At the trial the evidence was conflicting as to where the plaintiff's foot was caught. The defendants' evidence tended to show that the foot was caught between the edges of the cover plates above the top surfaces of the buffer plates. The defendants' evidence also tended to show that with all the mechanism in normal condition and working properly, the edges of the cover plates might in the course of the movements of the train assume a distance apart in which it would be possible for them to catch and hold the shoe of a passer-by if the foot were turned sidewise. The plaintiff testified that his foot was squeezed and twisted. If the jury had believed that the plaintiff was caught between the cover plates, we think there was no evidence from which they could have found that there was any defect in either car or that the defendants were negligent. It is true that they could find that in some circumstances there was some danger from the cover plates, but there was no evidence that the mechanism was out of order, or that it was not the type in common use, or that any safer mechanism was in use anywhere or had been devised for guarding passengers from the consequences of the inevitable jostling of one car against

another at the point of contact. *Adduci* v. *Boston Elevated Railway*, 215 Mass. 336. *Perkins* v. *Bay State Street Railway*, 223 Mass. 235. *Coleman* v. *Boston Elevated Railway*, 249 Mass. 155. *Grabb* v. *Nahant & Lynn Street Railway*, 250 Mass. 401. *Bannister* v. *Berkshire Street Railway*, 301 Mass. 598, 601. See *Welch* v. *Boston Elevated Railway*, 187 Mass. 118; *Falkins* v. *Boston Elevated Railway*, 188 Mass. 153. Testimony from one witness that in his opinion the cover plates should not be more than a quarter of an inch apart, "when the cars are going along in the usual fashion," cannot fairly be taken to mean that occasions would not arise in the operation of the train when the plates would necessarily be pulled much farther apart.

But there was evidence in the somewhat confused testimony of one of the plaintiff's witnesses, which, if believed, would have tended to show that the buffer plates had become separated, and that the plaintiff's foot was actually caught between the buffer plates and not between the cover plates. This witness testified that he could see clear down between the cars and could see a portion of the draw bars and the roadbed below. With the probability of this we are not concerned. The jury could have found that separation of the buffer plates in this way was not consistent with the proper operation of the mechanism and created a serious and unnecessary risk. We think they could also have found that such a thing was not likely to occur without negligence in the construction, repair, or inspection of the cars. We think the case is to be classed with those in which it has been stated or held that an unexplained coming of a wheel off a coach (*Ware* v. *Gay*, 11 Pick. 106), fall of a lamp shade from the top of a car (*White* v. *Boston & Albany Railroad*, 144 Mass. 404), breaking apart of a train (*Thyng* v. *Fitchburg Railroad*, 156 Mass. 13, 19), breaking of a piece of iron from a guy wire (*Uggla* v. *West End Street Railway*, 160 Mass. 351), slipping of one draw bar past the other (*Bowers* v. *Connecticut River Railroad*, 162 Mass. 312, 318), bending of an iron bar, part of a coupling apparatus (*Magee* v. *New York, New Haven & Hartford Railroad*, 195 Mass. 111), collision of cars (*Savage* v. *Marlborough Street Railway*, 186

Mass. 203), coming up of a piece of iron through the seat (*Hebblethwaite* v. *Old Colony Street Railway*, 192 Mass. 295), derailment of a car (*Minihan* v. *Boston Elevated Railway*, 197 Mass. 367, 373; *Gilchrist* v. *Boston Elevated Railway*, 272 Mass. 346), explosion of a controller (*Beattie* v. *Boston Elevated Railway*, 201 Mass. 3), blowing off of a car roof (*McNamara* v. *Boston & Maine Railroad*, 202 Mass. 491, 495–496), closing of a car door in the circumstances shown (*Silva* v. *Boston & Maine Railroad*, 204 Mass. 63; *Craft* v. *Boston Elevated Railway*, 211 Mass. 374), folding up of a car step (*Fitzgerald* v. *Boston Elevated Railway*, 274 Mass. 287), or loose window catch (*Scott* v. *Boston Elevated Railway*, 276 Mass. 21) is some evidence of negligence. Compare *Buckland* v. *New York, New Haven & Hartford Railroad*, 181 Mass. 3; *Mulry* v. *Boston Elevated Railway*, 278 Mass. 210; *Conway* v. *Boston Elevated Railway*, 255 Mass. 571. See *Oliver* v. *New York Central Railroad*, 273 Mass. 216.

The trial judge took the position that even if there was a defect there was no evidence that it had existed long enough to charge the defendants with negligence. This principle, of course, has frequent application in cases where the defect is such that its mere existence has no tendency to prove that the defendant was negligent in respect to it. The so called "banana peel" cases, such as *Goddard* v. *Boston & Maine Railroad*, 179 Mass. 52, are classical illustrations. But where the instrumentality involved is in the exclusive control of the defendant at the time of the injury and the defect is of such nature that its mere existence can reasonably be thought more likely to be due to the negligence of the defendant than to some other cause, then by hypothesis a case for the jury is made out without carrying the actual proof beyond the existence of the defect causing injury to the plaintiff. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 534–536. *Fitzmaurice* v. *Boston, Revere Beach & Lynn Railroad*, 256 Mass. 217, 220. *Roscigno* v. *Colonial Beacon Oil Co.* 294 Mass. 234.

The judge may have relied upon the absence of evidence that the cars belonged to the defendants and the shortness of the time during which they were proved to have been

in the defendants' possession. But even if we assume that both cars belonged to the Boston and Maine Railroad, nevertheless it seems that, under our decisions, where a defendant railroad has taken a car of another railroad into its control and is using it for its own purposes, as the jury could find the defendants in this case had done, the same inferences from the existence of the defect may be drawn against it that could properly be drawn if the car were its own. *McNamara* v. *Boston & Maine Railroad*, 202 Mass. 491, 495–496. *Beattie* v. *Boston Elevated Railway*, 201 Mass. 3, 7. See *Magee* v. *New York, New Haven & Hartford Railroad*, 195 Mass. 111, 113. This case is not like *Griffin* v. *New York, New Haven & Hartford Railroad*, 279 Mass. 511, 514, where inferences of the defendant's negligence from the accident itself were overcome by testimony by which the plaintiff was bound. In the circumstances of this case the defendants can scarcely complain that it is unjust to leave them to submit their explanation to the jury, if they have an explanation which will exonerate them, in view of their superior means of knowledge and in view of the difficulty of drawing from the mere existence of the defect any inference of negligence against the owner with respect to an accident which occurred while its property was in the possession of another. *McNamara* v. *Boston & Maine Railroad*, 202 Mass. 491, 499.

*Exceptions sustained.*