ALFRED J. OLIVER *vs.* NEW YORK CENTRAL RAILROAD COMPANY.

Worcester.    September 23, 24, 1930. — November 25, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Negligence,* Railroad, Contributory, Assumption of risk.

Where, at the trial of an action of tort against a railroad corporation for personal injuries received by the plaintiff as, in passing through a vestibule of a vestibuled passenger train when it was going around a curve, he put out his hand to steady himself and caught his fingers between exposed sliding plates at the side of the vestibule, it appeared that the plaintiff on previous occasions within a month had observed curtains at the sides of vestibules on the defendant's trains but never had noticed them except when they were covering the plates, that after entering the train he had passed through two cars; and he testified that one of such cars was a smoking car in which he did not care to ride and which was "pretty well crowded," although there might have been a number of seats which were not occupied, and that in the second "the seats seemed to be pretty well taken," although he "could have used some seats" but that there was no seat that he "could really get in and sit comfortably immediately without disturbing some one," the questions, whether the plaintiff was guilty of contributory negligence and whether he had assumed the risk of his injury, were for the jury.

It is not a rule of law, governing the movements of a passenger in a vestibuled railroad train while seeking a seat, that he is bound as a matter of law at his peril to become seated in the car he enters if there is a seat, and that he assumes the risk or is guilty of contributory negligence if he chooses to leave that car in search of a more commodious seat or of more agreeable surroundings in another car.

TORT for personal injuries.    Writ dated October 28, 1927.

In the Superior Court, the action was tried before *Brown,* J.    Material evidence is stated in the opinion.

At the close of the evidence, the defendant moved that a verdict in its favor be ordered. The motion was denied. The defendant then asked for and the judge refused the following rulings among others:

"2. Upon all the evidence, the plaintiff was guilty of contributory negligence and cannot recover.

"3a. Upon all the evidence, the plaintiff assumed the risk of all dangers incident to his position upon a car platform arising out of the exposed position and cannot recover.

"3b. As the plaintiff, upon his own evidence, was standing in the vestibule of a train when he might have been seated, and is injured by an accident which would not have happened to him, if seated, he cannot recover."

"8. There was no ground of necessity or propriety which justified the plaintiff in being upon the platform of the moving train.

"9. The plaintiff cannot recover, as his own evidence shows he left the place assigned for passengers and assumed an exposed position without any ground of necessity or propriety for his action.

"10. If the plaintiff voluntarily and by his own choice, chose to wait outside the train until the train was about to start and then chose to pass through the moving train without necessity and only to find an entirely empty seat, he cannot hold the defendant liable for injuries to which his act contributed."

There was a verdict for the plaintiff in the sum of $6,000. The defendant alleged exceptions.

*F. W. Knowlton,* for the defendant.

*C. E. Tupper,* (*A. B. Cenedella* with him,) for the plaintiff.

PIERCE, J. This is an action of tort. The case was tried to a jury and resulted in a verdict for the plaintiff. It comes before this court on the exceptions of the defendant to the denial of the judge to grant a written motion for a directed verdict in its favor, to his refusal to give certain requests for rulings, and to certain portions of the charge.

The evidence in its most favorable aspect for the plaintiff warranted the jury in finding that the facts were as

follows: On the afternoon of January 19, 1927, the plaintiff, a dentist, and living in Milford, Massachusetts, went to the South Station, in Boston, to take a train which regularly left that station at 4:50 P.M. and had been running at about that time for a good many years. This train runs via Trinity Place, Riverside and Framingham on to Milford. The plaintiff knew from the fact that he had been frequently on the train between Trinity Place and the South Station there were a great many switches and cross overs over which the train jolts, and they are narrowed to one outbound track at Trinity Place and one at Back Bay Station. After leaving the South Station there is a long sharp curve by which the train turns to the right for a considerable distance. A vestibule train of five or six cars with the smoker at the rear end had backed into the South Station and was at its berth to receive passengers when the plaintiff arrived there some ten or fifteen minutes before 4:50 P.M. This train was one of the type which have cars that "have springing ends with accordian convolutions of some preparation of prepared rubber or texture or fabrication" that work in between iron frames about six inches wide and make the vestibule. The iron frames are attached at the top and bottom to the cars by springs. The cars are always matched together. At the couplings and the top of the passageway there is a platform that covers the buffers and the buffers make part of the walk through. There are buffer plates and there is a platform that covers all the mechanism underneath. Right across the end of these plates there is an upright curtain that pulls and hooks at the other side; sometimes it is on a gate and it is not automatically shut together. There is a hook there when the gate is not used, and the plates slide against each other. The upright curtains are about six or seven feet tall and are pulled across and cover the plates as they slide. As a car goes around a curve one edge of the plates goes out. There is a rubber curtain or cloth "across the front of those two plates that just covers the plates as the car goes around the curve." The spring of the roller

gives with the sliding of the plates so that the curtain is a guard and protection to passengers against the sliding plates. The curtains " are supposed to be hooked across when . . . [the trains] leave the station at Boston." It was " the duty of the brakeman to see that they are hooked," and the curtains on the vestibules between the two rear cars had been drawn and fastened when the train for Milford left the South Station. The plaintiff, after his arrival at the platform, did not at once board the train but stood talking with the brakeman for ten or fifteen minutes at the rear end and left side of the train until the brakeman signalled the engineer that it was all right to start. He stood there in order to be seen by a friend who had said, when the plaintiff left him, that he would meet him at the South Station at " about four or five o'clock." The plaintiff carried a cigarette and a newspaper as he " swung up onto the rear platform of the rear car." He stated that he thought the rear car was a smoking car; that it was " pretty well crowded, " although there might have been a number of seats which were not occupied; that he did not care to ride in the smoker, and leaving the cigarette, he passed from the smoking car across the platform and into the next car but did not stop there because " the seats seemed to be pretty well taken, and . . . [he] didn't see any seat that was handy"; that he " could have used some seats"; that there were people sitting in them, ladies, some with bundles, and no seat that he " could really get in and sit comfortably immediately without disturbing some one "; that he passed from the second car into the vestibule with a purpose to enter the third car; that he did not read his paper as he passed through the cars or while on the platform between the second and third cars, and he did not go onto the last named platform to smoke a cigarette. The jury were further warranted in finding that as the plaintiff with his newspaper under his arm passed into the third vestibule the car lurched and hit the curve; that the plaintiff put up his hand to balance himself and his fingers were caught in the space between

the plates and injured; that space was brought about by the plate on one car sliding by the plate on the other car when the train went around a curve, and although the plaintiff had noticed the curtains within a month before the accident he had never noticed them except when they were covering the plates.

On the foregoing facts it is the contention of the defendant that a verdict should have been directed in its favor because, as it alleges, the plaintiff, in passing through the cars to the place where the accident occurred, disregarded seats in the smoking car and the next car and without any "necessity or propriety" went forward into the vestibule where the unprotected plates exposed a person passing over the platform to unusual and unnecessary danger of injury. This contention would find support, passing the admitted fact that the train was a vestibule train, in *Hickey* v. *Boston & Lowell Railroad,* 14 Allen, 429, 433, in *Locke* v. *Director General of Railroads,* 241 Mass. 284, and in many intermediate cases, cited in the defendant's brief, if the jury were not warranted in finding on the evidence that the plaintiff when injured was in the act of walking through the vestibule, and was not "standing on the platform between the cars, with a newspaper in front of him, smoking and leaning against the vestibule plate just where the buffers come together," as the defendant contends was the fact upon the testimony of its conductor. The issue of the plaintiff's contributory negligence or of his assumption of risk, which arose on disputed testimony for the plaintiff and defendant, was for the jury under proper instructions. Upon this issue the judge instructed the jury, without exception by either party, as follows: " One more thing, it has been suggested here that this plaintiff was upon that platform not for the purpose of passing through from one car to another, but that he was reading a paper, possibly smoking a cigarette. If you are satisfied that is the fact he cannot recover against this defendant, and I will say that as a matter of law, whether there was any rule posted as to which he had knowledge or not."

We find no case and the parties cite none where. it was decided that one entering a steam railroad passenger car of any type is bound, as matter of law, at his peril to become seated in that car if there· is a seat, and that he assumes the risk or is guilty of contributory negligence if he chooses to leave that car in search of a more commodious seat or of more agreeable surroundings in another car. And we are of opinion that such is not the rule of law which governs the movements of passengers while seeking seats.   Moreover, this train was a vestibule train of the type described, and in character was none the less such a train because the brakeman had neglected to make the vestibule safe or because the steps were not closed, owing to the nearness of the station.   As to such trains the question of the plaintiff's due care or assumption of risk in standing or passing ovei the platform is ordinarily one of fact and not of law.   See *New York, New Haven & Hartford Railway* v. *Kilby*, 233 Fed. Rep. 252.   The refusal to direct a verdict for the defendant was right.   There was no error in refusing to give the requests or in the portions of the charge to which exception was taken.

*Exceptions overruled.*