## LIMA v. PENNSYLVANIA R. CO.

Civ. No. 51-303.

United States District Court
D. Massachusetts.

May 27, 1952.

Charles R. Desmarais, Walsh & Bentley, New Bedford, Mass., for plaintiff.

Bailey Aldrich, Choate, Hall & Stewart, Boston, Mass., for defendant.

WYZANSKI, District Judge.

The case is before the Court on defendant's motion for summary judgment.

Plaintiff, a citizen of Massachusetts and an employee of Atlas Tack Company, seeks to recover for personal injuries sustained at Fairhaven, Massachusetts, while he was lawfully unloading a freight car at the company's plant. Plaintiff asserts that his injuries were caused by falling through the rotten, broken and improperly patched floor of a freight car. Defendant, the Pennsylvania Railroad Company, a Pennsylvania corporation, which was neither the owner nor the initial carrier, had acted as an intermediate carrier in transporting that freight car to Greenville, New Jersey; and the New York, New Haven & Hartford Railroad Company, which is not a defendant, had acted as final carrier in transporting the car to its final destination at Fairhaven.

Neither the pleadings nor affidavits nor sworn testimony presented at the time that defendant's motion for summary judgment was argued indicate that the defendant, Pennsylvania Railroad Company, the intermediate carrier, had any actual knowledge that the flooring of the freight car was rotten or otherwise defective. The most that is shown is that the plaintiff would testify that when the freight car was at Fairhaven "the wood around the hole [into which he fell] appeared to be decayed" [plaintiff's 12th answer to defendant's interrogatories] and that "there were several patches over holes which appeared to be decayed and in one place the boards were missing entirely from the flooring and it appeared to me that if anyone examined this freight car they would have seen several holes in the flooring which were not patched" [plaintiff's 7th answer to defendant's interrogatories]. In short, evidence available to plaintiff will go no further than to show that he observed decay when the freight car was delivered. From this evidence he infers and would expect the jury to infer that the decay could have been discovered by the Pennsylvania Railroad Company, had it made a reasonable inspection during the period of time it acted as the intermediate carrier.

The question is whether, if such an inference were drawn, plaintiff could be allowed to recover damages from the defendant, it being only an intermediate carrier.

██ Since this case arises in this Court by virtue of the diversity of citizenship of the parties, this Court must apply the conflict of laws rules as well as the substantive rules which would be applied by a Massachusetts state court. Although the Pennsylvania Railroad Company turned the freight car over to the New York, New Haven & Hartford Railroad Company in New Jersey, since the accident occurred at Fairhaven, Massachusetts, the Massachusetts state court would apply its own substantive law. Trudel v. Gagne, Mass., 104 N.E.2d 489; Strogoff v. Motor Sales Co., Inc., 302 Mass. 345, 347, 18 N.E.2d 1016; cf. Carter v. Yardley & Co., Ltd., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559; Restatement, Conflict of Laws, §§ 378, 379.

██ Under the law of Massachusetts an intermediate carrier is not responsible to a person injured in unloading a freight car which had passed out of the custody of the intermediate carrier and into the custody of an ultimate carrier if the injury was caused by a defect in the car which was not known to the intermediate carrier and of which the ultimate carrier had a reasonable opportunity to be informed. Glynn v. Central Railroad Company, 175 Mass. 510, 56 N.E. 698. The rule announced in the Glynn case by Chief Justice Holmes, and applied by him to support a directed verdict, remains the law of this Commonwealth. See Carter v. Yardley & Co., Ltd., 319 Mass. 92, 99 note 2, 64 N.E.2d 693. It is in accord with the law of most other jurisdictions. Caledonian R. Co. v. Mulholland, [1898] A.C. 216; Copeland v. Chicago, B. & Q. R. Co., 8 Cir., 293 F. 12; White v. New York, New Haven & Hartford R. Co., 25 R.I. 19, 54 A. 586; Sykes v. St. Louis & S. F. R. Co., 178 Mo. 693, 77 S.W. 723; Ruiz v. Midland Valley R. Co., 158 Kan. 524, 148 P.2d 734, 152 A.L.R. 1307. Sometimes the immunization of the intermediate carrier is put upon the ground that it has been relieved of responsibility and the chain of causation has been broken

by the intervention of a successor carrier to whose negligence liability is to be attributed. At other times it is put upon the broad principle that one who merely handles on an intermediate basis either a freight car or any other chattel ceases to have responsibility for injuries caused by undiscovered defects after he has abandoned control, provided that the party who took control from him had had a reasonable chance to inspect and discover the unknown defect. Cf. Restatement, Torts, as amended in 1948, section 402. See Chief Justice Holmes in Glynn v. Central Railroad Company, 175 Mass. 510, at page 512, first full paragraph, 56 N.E. 698.

Perhaps it is also appropriate to add, in view of certain suggestions which were made at the bar, that plaintiff cannot surmount the obstacle of the Glynn case by invoking the doctrine of *res ipsa loquitur*. Such a doctrine does not impose upon an intermediate carrier liability to a person injured while unloading a car which has already passed out of the control of the intermediate carrier into the hands of the ultimate carrier. McNamara v. Boston & Maine Railroad Co., 202 Mass. 491, 499, 89 N.E. 131; Louisville & Nashville Railroad Co. v. Chatters, 279 U.S. 320, 332, 49 S.Ct. 329, 73 L.Ed. 711.

Motion for summary judgment granted.