ALBERT DEMERS *vs.* ILLINOIS CENTRAL RAILROAD & another.

Suffolk. February 4, 1959. — May 19, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Negligence,* Railroad: defective car. *Proximate Cause. Railroad,* Defective car. *Practice, Civil,* Auditor: findings; Findings by judge.

Where an auditor whose findings were not to be final based his conclusion as to liability solely upon his subsidiary findings and such findings warranted an inference contrary to his conclusion and trial was had without jury upon his report only, the trial judge properly might draw the contrary inference and order entry of judgment accordingly. [250]

Negligence of a railroad owning a freight car in permitting it to be put in service on a trip with a jagged hole in its floor might properly be found not to have been a proximate cause of personal injuries later sustained because of the hole where it appeared that the car was completely unloaded by the consignee at the end of such trip and was then turned over in the same condition to the control of another railroad,

which without repairing it reloaded it and rerouted it on the other railroad's own business, and that the injuries occurred while it was being cleaned following its unloading again at the end of the second trip. [250–251]

TORT. Writ in the Municipal Court of the City of Boston dated June 27, 1955.

Upon removal to the Superior Court the action was referred to an auditor and was heard on his report only by *Murray, J.,* who denied a motion for judgment by the plaintiff and ordered judgment for the defendant Illinois Central Railroad. The plaintiff alleged exceptions.

*Edward J. Barshak,* (*Bertram A. Sugarman* with him,) for the plaintiff.

*Daniel F. Featherston, Jr.,* for the defendant Illinois Central Railroad.

WILLIAMS, J. This is an action of tort brought originally against two railroads to recover for personal injuries caused by the defective condition of a box car of the defendant Illinois Central Railroad, hereinafter referred to as the Central, in which the plaintiff was working. The action was referred to an auditor whose findings of fact were not to be final. He found that the car belonged to the Central and having been unloaded by the original consignee at Laurel, Mississippi, was there turned over to the Southern Railroad on September 20, 1954. It was then empty and in its floor near the door was a jagged hole about one foot square. The car was then loaded with masonite and routed to Boston where it arrived in the yard of the defendant Boston and Maine Railroad on September 30, 1954. A portion of the cargo was unloaded at Cambridge and on October 8 the car was moved to a siding of J. W. Greer Co. in Wilmington. The employees of J. W. Greer Co. there removed the rest of the masonite which to a depth of two feet still remained in the car. The foreman of that company noticed the hole and covered it with a metal plate four feet long, three feet wide and three sixteenths of an inch thick. On October 11, the plaintiff, an employee of J. W. Greer Co., "as part of his duties" entered the car to clean it. He had

been told that the plate was the property of his employer and picked up one side of it to remove it. While pushing it from the car, he stepped into the hole, of which he had no knowledge, lost his grip on the plate, and in shielding himself from the falling plate received a severe laceration on his hand. The car was in the same defective condition when last inspected by the Central on September 6, 1954, and when it transferred control to the Southern Railroad. There was no evidence that it was inspected by the Southern or that it passed an inspection point of this railroad while in its control.

The auditor reported, "Upon all the evidence, I find as a fact that: . . . 3. The defective condition of the car was known, or reasonably should have been known to the defendant Illinois Central Railroad. 4. The defendant Illinois Central Railroad was negligent in permitting the car to be put in service with a hole in the floor thereof, having reason to believe that persons would enter thereon for the purpose of loading, unloading or cleaning same. 5. The Southern Railroad had an opportunity to examine the car when same was turned over to it empty. . . . 6. The defendant Boston and Maine Railroad had no reasonable opportunity to examine the car during such time as it was in its control. 7. The defendant Boston and Maine Railroad was not guilty of any negligence in its conduct toward the plaintiff. 8. The plaintiff, while in the exercise of due care, was caused to fall and sustain severe injuries due to the negligence of the defendant Illinois Central Railroad. Accordingly, I find for the plaintiff on count 2 of his declaration against the Illinois Central Railroad and assess damages in the sum of twenty-five hundred ($2,500) dollars."

Neither party reserved right to a jury trial or a right to introduce further evidence. See Rule 88 of the Superior Court (1954).

The plaintiff filed a motion for judgment against the Central on the auditor's report. The judge denied this motion and ordered judgment for the Central to be entered. The plaintiff excepted.

The question for decision is whether on the facts stated in the auditor's report the judge was warranted in finding that the Central was not responsible for the plaintiff's injuries. Although the subsidiary findings of the auditor were said to be based upon all the evidence, it is apparent that the auditor's conclusion as to the Central's liability was founded solely upon these subsidiary findings. See *Deyo* v. *Athol Housing Authy.* 335 Mass. 459, 463.

If they warranted the drawing of more than one inference the judge could draw that which appeared the more reasonable. *Savin* v. *Block,* 297 Mass. 487, 489. The auditor found that the negligence of the Central consisted in sending out a defective car with "reason to believe that persons would enter thereon for the purpose of loading, unloading or cleaning" it, and that the plaintiff was caused to fall by reason of this negligence. Assuming that the auditor was referring to proximate cause he seems to have given no consideration to the effect on the train of causation of the acts of the intermediate carrier, the Southern Railroad. That railroad took over control of the car in Mississippi at the end of its initial trip. It was then empty and had the same obvious jagged hole in the floor with which it started. The Southern without repairing it reloaded it and rerouted it to Boston on its own business. It in effect adopted it as part of its own equipment. See *Ladd* v. *New York, N. H. & H. R.R.* 193 Mass. 359; *McNamara* v. *Boston & Maine R.R.* 202 Mass. 491.

This court said on similar facts in *Glynn* v. *Central R.R.* 175 Mass. 510, "Whatever may be said as to the responsibility for a car dispatched over a connecting road before there has been a reasonable chance to inspect it, after the connecting road has had the chance to inspect the car and has full control over it, the owner's responsibility for a defect which is not secret ceases." The *Glynn* case is not, as contended by the plaintiff, inconsistent with the principle stated in *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96, that a "person owning or controlling a thing that . . . is in a dangerous condition, either to his knowledge or as a result

of his want of reasonable care in . . . inspection, who deals with or disposes of that thing in a way that he foresees or in the exercise of reasonable care ought to foresee will probably carry that thing into contact with some person, known or unknown, who will probably be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him." It is recognized in that case (p. 99) "that the causal relation of . . . [the] negligence to the injury may be broken by the intervention of a superseding cause . . . such as some negligence or fault of another." The *Glynn* case decided what in the circumstances described was a superseding cause. We agree with the recent statement (1952) in *Lima* v. *Pennsylvania R.R.* 105 F. Supp. 97, 98 (D. Mass.), and cases cited, that the rule of the *Glynn* case "remains the law of this Commonwealth" and "is in accord with the law of most other jurisdictions."

While the contributing act of another will not excuse the first wrongdoer if the act ought to have been foreseen, *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 517, and cases cited, there are no findings of custom or contract to warrant an inference that acts of the Southern were reasonably to have been expected. They were of a character which the judge could find relieved the Central from responsibility for its defective car.

There was no error in the order for judgment.

*Exceptions overruled.*