Joe BOOP, Plaintiff-Appellant,

v.

FORD MOTOR COMPANY, Dearborn
Motors Corporation, Defendants-
Appellees.

No. 12842.

United States Court of Appeals
Seventh Circuit.

May 5, 1960.

John P. Price, Carl Seet, Ralph Hamill, Joseph A. Kutch, Indianapolis, Ind., for appellant, Hollowell & Hamill, Indianapolis, Ind., of counsel.

Harry T. Ice, Robert D. Risch, Indianapolis, Ind., Peter F. Hilder, Dearborn, Mich., for defendant-appellee, Ross, McCord, Ice & Miller, Indianapolis, Ind., of counsel.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff, a farmer by occupation, brought this suit claiming damages in the sum of Two Million Dollars for the alleged misappropriation by defendants, Ford Motor Company (Ford) and Dearborn Motors Corporation (Dearborn), of his original ideas and designs for a corn picker. Dearborn was never served with process, and did not appear in this action. The District Court granted Ford's motion for a summary judgment and dismissed the complaint and the suit.[1]

Plaintiff claims he developed new and novel ideas for mounting a corn picker on a Ford tractor; that he revealed these ideas to representatives of Dearborn on several occasions between 1947 and 1952; that Ford began the manufacture of mounted corn pickers in 1955, and that such corn pickers incorporated his novel ideas.

Plaintiff's complaint is in three paragraphs. The first alleges the named defendants acquired from him by fraud and misrepresentation, certain new and novel ideas; in the second paragraph that plaintiff contracted to sell said ideas to defendants, but he has not been paid

1. The District Court's opinion is printed in 177 F.Supp. 522.

therefor, and in the third paragraph, that defendants wrongly converted to their use plaintiff's new and novel ideas.

It is apparent that if plaintiff were to sustain the allegations of any of the three paragraphs of the complaint at a trial, it would be necessary for him to establish as a minimum 1) the disclosure to Ford of a new and novel idea for mounting a corn picker, and 2) that Ford made use of such idea.

As plaintiff made no disclosure directly to Ford, it is necessary to examine the relationship between Ford and Dearborn. In 1946, Dearborn was organized as a Delaware corporation. Some of the directors of Ford were also directors of Dearborn. However, Dearborn was a completely separate corporation from Ford. It distributed Ford tractors and its own line of farm machinery. On August 1, 1953, Ford purchased the principal assets of Dearborn other than cash and receivables, and Dearborn changed its name to Aurora Corporation. Prior to August 1, 1953, Zich, Bailey, Richey and Sawyer, who will be hereinafter mentioned, were employed by Dearborn. After August 1, 1953, Zich, Richey and Sawyer became employees of Ford.

Plaintiff claims he developed two corn pickers. In 1945, he purchased an old Continental one-row fully-mounted corn picker. This device had been manufactured since 1927. Plaintiff owned a Ford tractor. In order to mount the Continental picker on this tractor, plaintiff had to move the mounting brackets forward to permit connection to the power take-off shaft. In 1946, plaintiff switched the wagon elevator from the side to the rear, and he built a sub-frame which was attached to the rear of the old frame in order to support the bevel gears for driving the elevator in its changed position. This Continental picker included a rectangular frame which plaintiff did not change. The three principal components, to-wit, the snapping unit, the husking bed and the wagon elevator were firmly fixed in position so that when the snapping unit was raised or lowered, the entire unit tilted. This picker was designated by the learned trial judge as the "Continental Adaptation."

On November 18, 1947, John Zich of the Sales Department of Dearborn came to the Boop farm at plaintiff's invitation. He examined the Continental Adaptation, and suggested to plaintiff that he apply for a patent. Plaintiff did so, and thereafter Patent No. 2,520,622 was issued. However, it was stipulated that in this action, plaintiff does not assert any claim under the patent.

In reality, plaintiff bases his claim on his second picker which was designated as "The Wood Bros.-Hancock Assembly." Plaintiff entered into a contract with Hancock Manufacturing Company of Greenfield, Indiana, (Hancock) whereby Hancock would do the engineering. It paid $2,500 to plaintiff and reserved an option to purchase within one year's time all of plaintiff's rights for an additional $7,500. Hancock did not exercise the option, and produced only one picker which was completed in 1951 and was delivered to plaintiff. In the fall of 1951, plaintiff endeavored to harvest his corn crop with the picker, but it did not work well. Plaintiff then purchased a Wood Bros.' pull-type picker with which he harvested his 1952 and subsequent corn crops.

The Wood Bros.-Hancock Assembly was similar in many respects to the Continental Adaptation. The wagon elevator extended to the rear; the entire unit was locked solidly to the frame; the connection to the hydraulic lift of the tractor was similar to that on the Continental Adaptation. The entire unit tilted with the raising or lowering of the snapping unit. Plaintiff never applied for a patent on his second picker.

On February 5, 1948, plaintiff wrote to Zich at Dearborn complaining that he did not hear from him. Zich did not reply. Then on September 30, 1948, plaintiff, without invitation, went to Dearborn's office in Detroit. He had with him several small pictures of the picker. He contacted Mr. H. G. Bailey

who refused to discuss the matter with him until he signed an agreement card. Plaintiff did sign the card,[2] and thereafter discussed the picker with Bailey. On October 22, 1948, plaintiff wrote Bailey asking that someone come down and examine his picker. In November of 1948, Sawyer and Richey did go to plaintiff's farm and looked at the picker. Richey took some pictures. On December 2, 1948, plaintiff wrote Bailey saying that he had not heard from Sawyer or Richey. On December 9, Richey wrote to plaintiff that Dearborn was not interested in the design of the Continental wherein a rectangular frame was mounted underneath the tractor axle.

On December 24, 1948, plaintiff wrote to Henry Ford, II. His letter was answered on January 14, 1949 by the Patent Counsel of Dearborn who stated the Engineering Department of his company was not interested in utilizing any of the features of plaintiff's picker. After the receipt of this letter, plaintiff sold his patent rights to Hancock. When Hancock failed to market the Wood Bros.-Hancock picker or exercise the option, plaintiff endeavored to get someone from Dearborn to look at same. On April 2, 1952, Zich wrote Carmichael, a friend of the plaintiff who had interceded for him, that if plaintiff would sign an agreement card, someone would come down to look at the picker. He enclosed a card which was almost identical with the first card which has been heretofore set forth in footnote 2.

Plaintiff signed the card, and in May, 1952, Richey and Zich saw the Wood Bros.-Hancock Assembly at the plaintiff's farm. On June 4, 1952, Zich wrote to plaintiff informing him that Dearborn was not interested in the picker.

The District Court might very well have justified its decision on the agreement cards which plaintiff signed. Hisel v. Chrysler Corp., D.C., 94 F.Supp. 996. There is no intimation or suggestion as to any misrepresentation as to the second card. It was signed by plaintiff after Dearborn's counsel had explained its meaning and effect. However, the District Court specifically stated that it did not base its judgment on these cards, and we shall examine the reasons given by the Court for its decision.

Ford came on the market in 1955 with a one-row and a two-row corn picker. These had what is known as a tricycle tractor. There were, of course, some points of similarity between the Ford pickers and plaintiff's, but all mounted pickers necessarily have certain parts in common. All have three basic units,— a snapping unit, a husking bed and a wagon elevator. Many corn pickers have the same general configuration; all mounted pickers are driven from the tractor power take-off. Also, the hydraulic lift is often used to raise and lower the snapping unit. The plaintiff is without recourse unless he can show that his ideas were, in fact, new and novel, and that Ford made use of same after a confidential disclosure had been made.

It is true that plaintiff's ideas asserted in this case need not have been new under the standard of invention required for patents, but we agree with the District Court that they were not new or

---

2. The agreement card executed on that date reads as follows:
"D M C — 157    Agreement.
In order to interest Dearborn Motors Corporation in certain ideas pertaining to corn picker represented by the undersigned to be of original and inventive character, and understanding that Dearborn Motors Corporation will consent to the disclosure of such ideas to its representatives only on the following conditions, the undersigned agrees with Dearborn Motors Corporation, in consideration of the foregoing that except as may be hereafter expressly provided otherwise by a written agreement executed by an officer of the Corporation, the rights and remedies of the undersigned arising out of such ideas or out of the disclosure thereof to, or the use thereof by, Dearborn Motors Corporation, or any of its representatives, shall be confined to such rights and remedies, if any, as may be accorded to the undersigned under the claims of issued United States patent.
"(Signed) Joe E. Boop—Signature.
"(Signed) W. G. Bailey—Witness
"9/30/48—Date."

novel under any standards. Some degree of novelty was required, otherwise plaintiff could not have had a property right which he could enforce as against Ford or anyone else. Puente v. President and Fellows of Harvard College, 1 Cir., 248 F.2d 799, 802.

In his excellent opinion, the District Judge analyzed plaintiff's claims of novelty such as Boop's method of mounting; the idea as to arrangement of the component parts; the idea of powering the picker from the tractor power take-off; the idea of using the hydraulic lift to lower and raise the snapping unit; and the idea of using units from Woods Bros.' pull-type picker for mounting on a Ford tractor. A number of prior art patents were discussed. A reference to the court's opinion shows that it was clearly demonstrated that all of plaintiff's claims of novelty were old in the industry, and, in addition, a number of them were not used by Ford in its corn pickers.

Mention should be made of the Foster corn picker design which, in itself, would seem to be a complete defense to plaintiff's claims. A drawing made in February 1945 of this design was before the trial court. Foster was an employee of Wood Bros. In the fall of 1944, he was assigned to the task of designing a one-row corn picker to be mounted on a Ford tractor. He completed his design February 1, 1945. This was about three years before plaintiff first approached Dearborn. The design utilized the standard Wood Bros.' pulltype picker except that a special snapping unit was designed to cut off corn stalks and crush them so that the corn borer in the stalk would be destroyed. However, the design could be used equally well with a standard Wood Bros.' snapping unit.

Dearborn became the owner of the Foster design on August 1, 1947 upon acquisition of Wood Bros. This was prior to any approach made by plaintiff to Dearborn. On August 1, 1953, Ford acquired the assets of Dearborn, and thus became the owner of and entitled to the use of the Foster design.

We, at first, had some concern as to whether the question of novelty might give rise to a question of fact which would prevent a decision of the issues herein on a motion for summary judgment. However, the documentary evidence before the court, showing lack of novelty, which evidence involved no question of credibility, was sufficient in itself to clearly demonstrate that in this case there is no genuine issue of any material fact. The trial court was entirely correct in ordering summary judgment for the defendants.

Affirmed.