Michael H. JULIANO, Plaintiff,

v.

HOBART MANUFACTURING COM-
PANY, Defendant.

Civ. A. 61–469–C.

United States District Court
D. Massachusetts.

Dec. 28, 1961.

Harold Cole, Boston, Mass., for plaintiff.

Robert L. Meade, John Kimball, Jr., Hale & Dorr, Boston, Mass., Lawrence B. Biebel, Dayton, Ohio, for defendant.

CAFFREY, District Judge.

The complaint in this removed action, originally filed by plaintiff Michael H. Juliano, a citizen of Massachusetts, in the Superior Court for Suffolk County, Massachusetts, alleges, in substance, that he invented a machine for the dicing of vegetables; that at the request of an agent for the defendant, an Ohio corporation, he delivered his invention to the defendant in confidence, on the condition that defendant would not copy the machine; that the defendant paid the plaintiff $100.00, by check, for the machine and further agreed to pay plaintiff an additional amount if the machine was commercialized by the defendant; and that thereafter, although the defendant did manufacture and sell machines substantially the same as plaintiff's machine, it wrongfully refused to recompense plaintiff therefor.

On August 21, 1961, the defendant filed its answer to the complaint, wherein it admitted that it bought a machine from the plaintiff for $100.00 but denied that it acquired the machine in confidence under the condition alleged by plaintiff. As one of several affirmative defenses the defendant avers in its answer that the plaintiff did not have any secret, confidential, or proprietary right in the machine because such a right was lost by public disclosure through earlier sales of

the machine and the acquisition of a patent by the plaintiff.

On September 27, 1961, the defendant filed a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. The defendant argues that upon the pleadings, the stipulation of the parties, and plaintiff's deposition with its accompanying exhibits, there is no genuine issue as to any material fact in dispute. The defendant contends, in this motion, that the facts indisputably show that there was a lack of confidential disclosure because of earlier public sales; that any rights which plaintiff had in his machine were terminated upon the issuance of his patent; and that even assuming plaintiff did have substantial rights in his machine the defendant did not violate those rights because it did not utilize the ideas embodied in the machine.

Thereafter, on October 6, 1961, plaintiff amended his complaint by adding another count to his declaration. The allegations in this additional count differ from those in the original declaration in the following respects: it is alleged that the machine is an attachment to a machine which the defendant already had on the market; that plaintiff had introduced a limited number of his machines to the trade for testing purposes; that he had delivered a machine to the defendant under the condition that the defendant would not use the machine without compensating plaintiff therefor; and that after defendant had paid plaintiff $100.00 plaintiff notified defendant that this did not give it the right to reproduce his invention. It is not alleged in this count that the defendant received the machine in confidence.

The parties have argued the motion for summary judgment and briefs have been filed. On the basis of the pleadings, the stipulations of the parties, and the testimony given and exhibits introduced at the deposition of the plaintiff, there would appear to be no genuine issue as to any of the following facts:

1. Some time in April 1956, after several months of development, the plaintiff designed a rough metal model of a machine for dicing vegetables.

2. This machine was made up of a Bloomfield french-fry cutter and the Hobart hopper front. It was a hand-operated machine which could be attached to a Hobart machine already on the market. The dicing of a vegetable by the machine involved two cutting operations: first, the slicing of a vegetable as it was forced through the grid by a hand-operated pusher, and second, the cutting of these slices into sections by a knife. No part of the machine was new to the industry.

3. At least 5 of these machines were manufactured for the plaintiff on or prior to April 30, 1956.

4. Thereafter, during the next five months, the plaintiff, through an authorized representative, sold 4 of these machines to food vendors in and around Boston. The plaintiff admits that these sales on the public market had no restrictions and were not made in confidence so as to prevent disclosure of his idea.

5. In the latter part of September 1956, the plaintiff, then a salesman for the defendant, delivered one of his machines to Mr. A. S. Bates, Sales Manager for Hobart, at the Boston Sales Office. This machine was delivered at Bates' request and was forwarded by Bates to the defendant in Troy, Ohio. Bates suggested, either then or at a later time, that the plaintiff might be paid something for it.

6. On November 26, 1956, plaintiff applied for a patent on his machine.

7. Some time in December 1956, Bates asked plaintiff how much he would sell the machine for and plaintiff said that he was "perfectly willing to sell it to the company for $100.00." Plaintiff described this as "another commercial sale at regular wholesale price."

8. The defendant thereafter issued to the plaintiff a check dated December 31, 1956, in the amount of $100.00. This check was cashed some time prior to February 25, 1957.

9. On January 8, 1957, counsel for plaintiff sent a letter to the defendant in Ohio stating that plaintiff was willing to sell his machine but wanted to make clear that the defendant was not authorized to make or sell the machine since it was disclosed to the defendant in confidence.

10. On February 25, 1957, Mr. F. D. Houser, defendant's Secretary and Chief Engineer, sent a letter to plaintiff stating that defendant had no desire to license his machine for manufacture or sale because it did not appear to be patentable.

11. The plaintiff continued to make and sell his machine, through his authorized representative, to customers in the Boston area. Approximately 25 machines were sold in all.

12. On November 11, 1958, a patent was issued to plaintiff by the United States Patent Office. This patent covered the "ornamental design for the vegetable and fruit cutting machine" which the plaintiff had developed.

█ Regarding the choice of law question, the law of the State in which a Federal District Court sits is controlling as to substantive issues, including the law of Conflicts Of Laws of the State. Klaxon Company v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940). Under Massachusetts law, which is controlling here, the ordinary rule of conflicts in torts cases is to apply the law of the place of the wrong. Kelly v. Loew's, Inc., 76 F.Supp. 473 (D.Mass. 1948), and Barber SS Lines v. Quinn Bros., 94 F.Supp. 212 (D.Mass.1950). The place of the alleged wrong in this case is Ohio, since it was there that the alleged breach of duty by the defendant occurred.

The only decision involving an action of this type which could be found in Ohio is Cincinnati Bell Foundry Co. v. Dodds, 10 Ohio Dec. Reprint 154 (1887), a case in which the plaintiff was seeking an injunction against the defendant's disclosure of the plaintiff's trade secret. In granting the relief sought, the Court said:

"It is clearly established in the case of Peabody v. Norfolk, 98 Mass. 452, that he who discovers and keeps secret a process of manufacture, whether the proper subject for a patent or not, has a property in it which a court of equity will protect against one who in violation of contract and breach of contract undertakes to apply it to his own use, or to disclose it to third persons. He has not an exclusive right to it as against the public or against those who, in good faith, acquire knowledge of it."

The language indicates that the person who discovers a novel idea *must himself keep it secret* if he is to be protected against disclosure by those to whom he conveys the idea under circumstances requiring a duty of good faith on the part of the recipient. Furthermore, protection will not be granted if the recipient receives this information under circumstances which do not create such a duty.

█ Although this is an old case it appears to reflect accurately the law as it generally exists today. The Restatement of Torts, Sec. 757, page 6, for example, states:

"Matters which are completely disclosed by the goods which one markets cannot be his secret. * * * substantial element of secrecy must exist, so that, except by the use of improper means there would be difficulty in acquiring the information. * * * Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the informa-

tion is known outside of his business; * * * (3) the extent of measures taken by him to guard the secrecy of the information; * * * (5) the amount of effort or money expended by him in developing the information; * * * (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

As is pointed out in Comment (a) to Section 757, American Law Institute Restatement of Torts, the privilege to compete with others in business includes the privilege to adopt their ideas and processes of manufacture, subject to certain well-recognized limitations furnished by the patent and copyright laws and by the common law protection afforded by the law of torts' proscription of using improper means to procure and to take economic advantage of and from another's trade secret.

Before this tort can be established the plaintiff must show that the idea is a trade secret and that knowledge of the secret is not available to the defendant without the use of improper means or methods of securing same. What is to be determined herein is whether the plaintiff's idea was a trade secret which was subject to common law protection, and whether, under the circumstances prevailing with regard to the relationship between plaintiff and defendant, the defendant can be found to have breached a duty of confidence imposed upon it by the relationship resulting from the contract between them with reference to the sale of plaintiff's machine to the defendant.

It is established, without any dispute, that prior to the sale and delivery of a machine to the defendant in September of 1956 for which plaintiff was paid $100.00 by defendant's check dated December 31, 1956, plaintiff had sold 5 other machines in April, May, June, and September of 1956, to various food vendors in the Greater Boston area. While plaintiff argues that he intended these sales as "tests" of his machine he does not and cannot contend that they were other than unconditional and unrestricted cash sales to buyers in the food trade. These unrestricted sales, by themselves, would establish that a substantial element of secrecy did not in fact exist at the time the defendant purchased the plaintiff's machine. Kinnear Weed Corp. v. Humble Oil & Refining Co., 150 F.Supp. 143, 159 (1956) (D.Texas), aff'd. 5 Cir., 259 F.2d 398, cert. den. 361 U.S. 903, 80 S.Ct. 210, 4 L.Ed.2d 158; Northrup v. Reish et al., 200 F.2d 924, 927 (7 Cir. 1953); Sandlin v. Johnson, 141 F.2d 660, 661 (8 Cir. 1944). These sales show, further, that knowledge of plaintiff's machine was available from these food vendors without the use of improper methods. Over and beyond this, delivery under the sale to the defendant was made in September of 1956, and defendant was free to examine the machine at will. Defendant paid for the machine with a check dated December 31, 1956, and a letter to defendant dated January 8, 1957, by counsel for plaintiff could not, and did not, impose any restrictions retroactively on the untrammeled title plaintiff acquired back in September 1956.

Plaintiff's case suffers from a second fatal defect, namely, that the idea involved is not new or novel. Plaintiff has admitted, on deposition (pp. 37 and 85) and in the letter marked Exhibit 10, that his idea is not new, saying " * * * there were vegetable dicing machines on the market for several years" p. 37; "All phases of the mechanics are as old as the hills" p. 85; and "the idea is old" Ex. 10. As the Court of Appeals for this Circuit said, 1 Cir., 248 F.2d 799, at 802, in affirming the decision of Chief Judge Sweeney of this court in Puente v. President and Fellows of Harvard College, D.C., 149 F.Supp. 33,

> " * * * the plaintiff * * * says that (defendant) stole from him the idea of publishing such a service. However, unless that idea was a novel and original conception with him he had no property right in it which he could enforce as against defendants."

To the same effect, see Boop v. Ford Motor Co., 177 F.Supp. 522, 525, aff'd. 278 F.2d 197, 200 (7 Cir. 1960).

Defendant's motion for summary judgment is allowed.