**Donald E. POWERS**
v.
**BETHLEHEM STEEL CORPORATION.**

**Donald E. POWERS**
v.
**McKIE LIGHTER CO., Inc.**
**Civ. A. Nos. 69–941–C, 69–942–C.**

United States District Court,
D. Massachusetts.
May 23, 1972.

directed verdict pursuant to Rule 50, Federal Rules of Civil Procedure, both at the end of plaintiff's cases and at the conclusion of all the evidence. Both cases were submitted to a six-person jury under leave reserved and the jury returned a verdict for plaintiff in each case in the amount of $275,000. So much of the case as involved a claim-over by Bethlehem Steel against McKie Lighter in the event the jury found against Bethlehem was withdrawn from the consideration of the jury by stipulation of counsel for McKie and Bethlehem and submitted for determination by the Court.

Taking the evidence in the light most favorable to plaintiff, it appears that a contract was entered into between Bethlehem Steel and McKie Lighter on July 12, 1966. The contract provided for McKie to do certain work to repair concrete pilings of Pier 3 and to repair and replace the fender system of Pier 2 at the Boston shipyard of Bethlehem Steel. Under the contract, McKie was to install concrete jackets on 53 concrete piles which supported the pier. This involved wire brushing all existing resteel and concrete surfaces coming in contact with the new work, installing removable steel and concrete forms, and furnishing and placing reenforcing steel and concrete.

Plaintiff Donald E. Powers is presently 38 years of age. At the time of the accident he was 33. He was then and is now a member of Local 56, Carpenters and Piledrivers Union. He has not at any material time ever been a member of the National Maritime Union. His employment as a piledriver immediately prior to his job at Bethlehem Steel involved piledriving work at the Boston City Hospital; in Harvard Square, Cambridge; and at the Merchants National Bank on State Street, Boston. There was no evidence that Mr. Powers did any work of any kind on the high seas or on or near the waterfront prior to the work at the Bethlehem shipyard. There was evidence that he and other employees of McKie had worked at the Bethlehem yard in 1966. Powers him-

Michael B. Latti, Kaplan, Latti & Flannery, Boston, Mass., for plaintiff, Donald E. Powers.

Leo F. Glynn, Glynn & Dempsey, Boston, Mass., for defendant, McKie Lighter Co., Inc.

Charles E. Colson, Cargill, Masterman & Cahill, Boston, Mass., for defendant, Bethlehem Steel Corp.

## OPINION

CAFFREY, Chief Judge.

These two civil actions, both of which arose out of the same industrial accident, were consolidated for purposes of trial. A six-day jury trial was had and the defendants in both cases moved for a

self began working at Pier 2 in August of 1966, replacing fenders along the side of the pier. He also worked on Pier 3 during August and September 1966, as a member of a group of McKie employees who were replacing some condemned concrete pilings. The work continued through December of 1966, and part of this time Powers worked as McKie's foreman. When it became necessary for the McKie employees to work on the under-side of the pier, or on the side of the pilings which was accessible only from underneath the pier, they used either of two rafts as platforms. One raft was 4 feet wide and 25 feet long. The other was 10 feet wide and 25 feet long. They were made of 12 x 12 timbers, lashed or bolted together. They had no decking or protective edge. It appears from the evidence that at all times during the performance of the contract these rafts were tied by lines either to the side of the pier or to pilings supporting the pier, and that they were maneuvered in under the pier and out alongside the pier by pulling on the lines or by hand-grabbing the pilings and pulling thereon while standing on the rafts. The line-pulling was done either by one or two men standing on the raft or by men standing on the pier. These rafts contained no means of self-propulsion, no power, no navigational equipment, no lights, no sleeping quarters, no permanently affixed equipment of any kind. Because of the shadow cast by the pier, artificial lighting was necessary to illuminate the area in which work was being done under the pier. For this purpose, extension lights were plugged into a source of electricity on the pier and allowed to dangle over either side of the pier. On the day of the accident, either Powers himself or one of his co-workers had plugged in two extension cords, owned and supplied by Bethlehem Steel, one of which was dropped over the harbor side and the other over the land side of Pier 3, at approximately the place where the two rafts were tied up and where the crew was about to begin working.

Shortly after six o'clock on the morning of October 6, 1967, Powers and Ward, another McKie employee, went down a ladder onto the 4' x 25' raft. Powers testified that as he stood on the raft an electric light bulb which was in a socket at the end of an electrical cable was approximately 10 to 12 feet directly over his head, that he looked up toward the bulb, and almost immediately thereafter the light bulb exploded causing several fragments to penetrate his left eye. After many hospitalizations at the Massachusetts Eye and Ear Infirmary this eye was enucleated. Neither Powers nor anyone else who testified gave any evidence whatsoever as to the cause of the light bulb's exploding. Powers, however, did testify that during the many months in which he had previously worked on the Bethlehem Steel premises as an employee of McKie, other light bulbs had "popped" and that he was aware of several prior explosions.

I. *As to Bethlehem's Motion for a Directed Verdict*

There was no evidence adduced at the trial that any object of any kind struck the light bulb, that any force or trauma was applied to the light bulb from any exterior source, nor was there any evidence that the bulb itself ever touched the water or the harbor or any other substance or thing external to the bulb. There was likewise no evidence of any electric current abnormality, voltage drop, current increase, or any other occurrence which could be characterized as an electrical abnormality of any sort which could conceivably have contributed to the explosion of the light bulb. Nor was there any evidence on the basis of which a finding could be made that Bethlehem knew or should have known that this bulb would explode.

■■ It is clear that the relationship between Bethlehem and plaintiff was that of an owner of land to an employee of an independent contractor hired by the landowner to do work on his premises. It is equally well-settled that in a diversity case the federal court

will apply the law of the state in which it sits, including its law of Conflict of Laws. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Sampson v. Channell, 110 F.2d 754, 760–761 (1 Cir. 1940); Juliano v. Hobart Mfg. Company, D.C., 200 F.Supp. 453, aff'd 303 F. 2d 830 (1 Cir. 1961). There is no question but that a Massachusetts court would apply Massachusetts law to the facts of this case. Lima v. Pennsylvania R. Co., 105 F.Supp. 97, 98 (D.Mass. 1952); Strogoff v. Motor Sales Co., Inc., 302 Mass. 345, 347, 18 N.E.2d 1016 (1939); Restatement of Conflict of Laws, Second, Ch. 7, sec. 146.

Recent Supreme Judicial Court decisions, including Burr v. Massachusetts Electric Co., 356 Mass. 144, 248 N.E.2d 492 (1969) have reiterated the long standing rule that:

> "The defendant, thus, owed him the same duty as it owed its own employees, and that duty was to disclose hidden defects of which the defendant was aware or of which in the exercise of reasonable care it should have known. Except in cases of hidden defects, the employer owes no duty to alter the conditions where the work is to be done or to make them safe for the employee. Williams v. United Men's Shop, Inc., 317 Mass. 319, 320, 58 N.E.2d 2; Sparks v. Kepnes, 339 Mass. 349, 351, 159 N.E.2d 109." (p. 147, 248 N.E.2d p. 495.)

The Court, in *Burr*, then made an observation which is dispositive of the instant case (also at p. 147, 248 N.E.2d at p. 495):

> "There was no hidden defect here. Burr knew of the existence and location of the wires; and even if not warned of their danger, he should have realized that they might be energized. There is no duty to warn of dangers which are obvious. . . ."

On Powers' own testimony, he knew that light bulbs without reflectors or metal protective cages were being used on this job. He also knew and testified that these bulbs "popped" from time to time. There is no evidence as to what caused the bulb which injured him to pop, and there likewise is no evidence, direct or circumstantial, from which a finding could be made that any latent defect was involved herein since plaintiff himself testified to his awareness of the condition he now says caused his injury. Further, even if on some theory not apparent to this court a bulb which exploded for an unknown reason could be considered a latent defect within the meaning of Massachusetts law, the plaintiff still may not prevail as there is not a scintilla of evidence in this case to form a basis for a finding that defendant knew, or with the exercise of reasonable care should have known, of its existence. Accord: Gobern v. Metals and Controls, Inc., 418 F.2d 290 (1 Cir. 1969).

Paraphrasing the above-quoted language from *Burr* to fit the facts most favorable to plaintiff, the paragraph would read:

> "There was no hidden defect here. Powers knew of the existence, condition, and tendency to occasionally explode on the part of the unprotected light bulbs. There is no duty to warn of dangers which are obvious."

■ Accordingly, the motion of defendant Bethlehem Steel Corporation for a directed verdict is allowed.

II. *As to McKie's Motion for a Directed Verdict*

■ On the evidence in this case, the relationship between Powers and McKie was that of employee and employer, and it is clear that based on this relationship Powers filed a claim against McKie pursuant to the Longshoremen's and Harborworkers' Compensation Act, 33 U.S. C. § 901 et seq. It is also clear that Powers received an award pursuant to his claim for compensation as a harborworker in the amount of approximately $39,000. A portion of the Longshore-

men's and Harborworkers' Act, 33 U.S.C. § 905, provides in pertinent part:

"The liability of an employer prescribed in section 904 of this title shall be *exclusive* and *in place of* all other liability of such employer to the employee." (Emphasis added.)

If this plain language of Congress means anything at all, it means that a person in the position of the plaintiff herein who files a claim for compensation *qua* harborworker, who testifies at that hearing under oath (as Powers while under cross-examination admitted he did) that he told the Commissioner who conducted the hearing on his compensation claim that he always was a piledriver, has precluded himself from thereafter seeking to enforce any other type of liability upon his employer. In short, the statute provides that having exercised rights under the Longshoremen's and Harborworkers' Compensation Act, plaintiff has made what Congress has ordained to be a binding election among possible remedies. That plaintiff and his counsel should realize the binding nature over and above the direct and unambiguous language of 33 U.S.C. § 905 quoted above, is further evidenced by the language in § 903(a), Title 33, which states in relevant part:

"No compensation shall be payable in respect of the disability or death of— (1) A master or member of a crew of any vessel."

If Powers was, in fact, a member of a crew of a vessel at the time of the accident, this supposed fact was certainly known both to Powers and his counsel at the time he or they made the decision to pursue his remedies under the Longshoremen's and Harborworkers' Compensation Act and seek a remedy which Congress had withheld from seamen.

That remedies to a single plaintiff against his employer are not available under both the Jones Act and the Longshoremen's and Harborworkers' Compensation Act has been specifically held by the Court of Appeals for the Fifth Circuit in Bodden v. Coordinated Caribbean Transport, Inc., 369 F.2d 273 (1966). See, also, Moore Dry Dock v. Pillsbury, 100 F.2d 245, 247 (9 Cir. 1938); and Dixon v. Oosting, 238 F.Supp. 25, 27 n. 1 (E.D.Va.1965). The Court of Appeals for the Fifth Circuit likewise has ruled that a longshoreman who has recovered against his employer under the Compensation Act may not thereafter impose Jones Act liability upon his employer. Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Service, 377 F.2d 511 (5 Cir. 1967).

Substantially the same ruling, adverse to petitioner, was handed down as the law in this Circuit in De Martino v. Bethlehem Steel Co., 164 F.2d 177 (1 Cir. 1947), a case in which the Court of Appeals ruled, in substance, that exercising the option to impose liability on one's employer under the Compensation Act is a legally binding election which precludes subsequent resort to the Jones Act as against the employer.

■■ Over and above the statutory preclusion just discussed, and as a separate, independent and additional ground for this decision, I rule that there was no evidence on the basis of which plaintiff could be found by a jury to have been a seaman or to have been engaged in work on a vessel. It is well-established law that whether or not a person is a seaman depends on the nature of his duties and whether or not they are maritime in character. Gale v. Union Bag & Paper Co., 116 F.2d 27 (5 Cir. 1940). Plaintiff's duties are described as follows in the contract between his employer and Bethlehem Steel:

". . . (McKie Lighter) shall provide for but not limited to the installation of concrete jackets on 53 concrete piles . . . consisting of wire brushing of all existing resteel and concrete surfaces coming in contact with the new work, the furnishing and installation of removable steel and concrete forms, the furnishing

and placing of all reinforcing steel and concrete, the furnishing and installation of all expansion bolts, wire mesh and other accessories . . . necessary to complete the work. . . ."

Applying the test of the *Gale* case, as well as the test set out in *Bodden, supra,* no finding that plaintiff was a seaman could be allowed to stand on the record of this case. In Swanson v. Marra Bros., 328 U.S. 1, 5, 66 S.Ct. 869, 871, 90 L.Ed. 1045 (1945), the Supreme Court ruled that in order to recover under the Jones Act the plaintiff must be "a member of a crew of the vessel," and further, that the vessel of which the plaintiff is a crew member must be (id., at p. 7, 66 S.Ct., at p. 872) "a vessel plying in navigable waters," that the plaintiff must have a more or less permanent connection with the ship and that his work must be aboard the vessel primarily to aid in the navigation of the ship. Applying these standards to the instant case, it is beyond the stretch of any rational imagination that a 25′ x 4′ x 1′ raft permanently tied to a pier by lines could be considered a ship, in or out of navigation. It is equally clear that plaintiff could not be found to have had a more or less permanent connection with the raft, even if it could be found to be a ship, and the above-quoted contract provisions make it crystal clear that plaintiff's duties were not primarily to aid in the navigation of the "ship."

Accordingly, because of the statutory provisions and because plaintiff could not be found to be a seaman serving as a member of a crew of a ship, the motion of defendant McKie Lighter Co., Inc. for a directed verdict is also allowed.

The claim-over by Bethlehem Steel against McKie Lighter is dismissed as moot by reason of the allowance of Bethlehem's motion for a directed verdict.

Judgment for the defendants.