Sikora, J.
BACKGROUND
By an original Superior Court complaint of December 1, 1994, the plaintiff Dennis Salmon alleged that, on December 4, 1991, he had properly stopped his car at a railroad crossing in the City of Worcester; that three boxcars from a train operated by the Providence and Worcester Railroad had come loose and collided with his automobile; and that he had suffered serious personal injuries. He alleged two causes of action: one for negligent operation of a locomotive by the individual defendant Richard LeFrancois; and one for negligence (apparently by reason of respondeat superior) against Providence and Worcester Railway (“P&W”) as the employer of LeFrancois and the operator of the train.
On or about February 6, 1996, by response to interrogatories provided by Salmon, both P&W and LeFrancois alleged (answer 17):
The owner of the subject boxcars, Illinois Central Railroad, was negligent in its maintenance and repair of the defective handbrake on the lead boxcar. Such negligence, it is contended, was the sole proximate cause of the accident which is the subject of the plaintiffs Complaint.
At the same time P&W produced to the plaintiff an investigative report which it had commissioned shortly after the accident. The eight-page report dated January 6, 1992, concluded (1) that the hand brake apparatus of the lead boxcar had been defective by reason of the “excessive length” of its linkage component; (2) that the defect had prevented the brake from halting the slide of the three boxcars down a grade and into the automobile; (3) that the defect was not discoverable by the usual inspection conducted by trainmen of railroads receiving interchanged boxcars owned by other railroads; that the detection of the defect lay “well beyond” the inspection performance required of the receiving railroad company (P&W); and (4) that the latent defect had proximately caused the accident.
In response to the information, Salmon on August 20, 1996, moved to amend his original complaint so as to add a third claim naming the Illinois Central Railroad (“ICR") as the owner of the three boxcars and charging it as a co-defendant with negligent failure to inspect, repair, and maintain the boxcars.
ICR originally failed to receive the mailed copies of those court papers. Consequently the clerk allowed the motion to amend for lack of opposition. Thereafter ICR received the papers. It has moved for reconsideration of amendment and has opposed allowance upon three grounds: (1) absence of any duty of care to the plaintiff under the standards of the freight car interchange system; (2) the expiration of the statute of limitations three years for torts, G.L.c. 260, §2A, governing the claim against it; and (3) lack of jurisdiction of the Massachusetts courts over it.
Both Salmon and P&W oppose ICR’s resistance to the amendment; and contest each of the proffered grounds.
DISCUSSION
I. LACK OF A DUTY OF CARE OWED BY ICR TO A PLAINTIFF INJURED BY A TRANSFERRED BOXCAR.
ICR contends that the defacto national system of free interchange of boxcars among railroad operators, the developed private regime of rights and duties among all participating railway carriers codified in the American Association of Railroads Interchange Rules, the backdrop of federal legislation facilitating the open interchange of freight cars as an aid to a flexible national economy, and the imposition of safety duties of inspection and maintenance upon the freight cars’ operator, other than owner, by the federal Interstate Commerce Commission, the Federal Safety Appliance Act, and specific federal decisions, all militate against the imputation of any duty of care on the part of the ICR in the circumstances of this case.
*94 I have examined ICR’s cited sources. They do embody the general themes posited; but none of them addresses or governs the circumstances of the present case. First the American Association of Railroads may certainly establish quasi-contractual standards of duty among its members subscribing to a voluntary system of interchange rules. However, it cannot displace the systems of state statutory and common law responsibility between railroads, on the one hand, and the citizens and residents of the states traversed by those railroads, on the other. Nothing in a private associations’ compact will supersede the pertinent state law.
Second, the federal statutes, ICC regulations, and decisions cited by the ICR similarly address the relationship between railroad and railroad; or their respective duties to a person injured by one of them. The central point of these sources is that the operator, and not the owner, of a boxcar is liable to an injured person if reasonable inspection and maintenance would have discovered and prevented the cause of injury. Here, the claim is that only the owner, ICR, and not the operator P&W, would reasonably have detected and remedied the latent defect of the boxcar. The cited law sources do not fit the facts of the case to date.
Third, ICR collects several Massachusetts decisions for the proposition that the operating carrier, and not a prior railroad, typically incurs liability for defects injuring third persons.[1] Again, that proposition is accurate but immaterial. Here the allegation is that the causal defect was imperceptible to the operator; and that only the owner could reasonably have discovered and corrected it. The strong countervailing implication of those decisions is that a reasonably undiscoverable defect in a freight car is not attributable to the operator, but rather to the owner. Glynn at 512. In this instance, then, Salmon has pleaded a legally recognizable claim against ICR.
II. AMENDMENT AFTER THE EXPIRATION OF THE GOVERNING STATUTE OF LIMITATIONS
ICR argues that the three-year statute of limitations for actions of tort had expired as of the time of amendment, G.L.c. 260, §2A; and that the usually liberal Massachusetts policy of the “relation back” of amendments under Mass.R.Civ.P. 15(c) should not operate by reason of the futility of the amended claim. For several reasons this reasoning is unpersuasive. First, ICR has not shown the amendment yet to be futile as a matter of substantive law (Section I, supra) or jurisdiction (Section III, infra).
Second, Salmon did not faultily permit the statute to expire upon his claim against ICR. He sued LeFrancois and P&W within the statutory period; and learned for the first time of the latent defect imputable to ICR by discovery responses from the original defendants in February of 1996. In reaction he submitted the amendment six months later. In Massachusetts, one typically measures the statute of limitations under the “discovery” principle: that is, from the point in time at which the claimant knew, or reasonably should have known, of the actionable fault. The amendment here falls well inside that deadline.
Third, and finally, Massachusetts does employ a generous “relation back” standard of amendment under Rule 15(c). It permits a claimant to substitute or to add defendants after the expiration of the usually controlling statute of limitations so long as the claimant has not culpably waited beyond the time limit by inaction in the face of actual or chargeable awareness of the new claim and party. Bengar v. Clark Equipment Co., 401 Mass. 554, 556 (1988) (authorities collected); Wadsworth v. Boston Gas Co., 352 Mass. 80, 88 (1967); McLaughlin v. West End Street Railway, 186 Mass. 150, 150 (1904). Nothing to date in the present case would deny the plaintiff the benefit of the usual amendment standard.
III. LACK OF JURISDICTION BY THE MASSACHUSETTS COURTS OVER THE ILLINOIS CENTRAL RAILROAD.
Finally, ICR argues that the Massachusetts courts lack personal jurisdiction over that railroad company for want of its presence in, or contact with, the Commonwealth. In an affidavit submitted by its superintendent of freight management, the company reports that it has not maintained any business office, repair facility, mailing address, or resident agent in Massachusetts; that it does not own or lease real property here; that it has never attempted to obtain business in Massachusetts, and does not advertise or solicit in the state; that it has never contracted to supply railroad services here; that it is incorporated in Delaware, maintains a principal place of business in Chicago, and runs its trains primarily on a north-south axis between Illinois and Louisiana.
ICR does acknowledge in the course of its court papers that it owns the three boxcars in question; that they were loaded with freight at the time of the accident; and that it received some compensation or consideration for the use of its boxcars in the interstate freight car exchange system (oral argument). It adds that it supplies such boxcars to the interchange systems in accordance with the rules of the American Association of Railroads; that that organization maintains a computerized record of the movement and location “of all cars based upon the information fed to it by the various railroads” participating in the nationwide system (superintendent’s affidavit). ICR does not report how many of its boxcars pass through the Commonwealth during any unit of time; nor the volume of compensation or other consideration received by it (actually or hypothetically) from the operation of its freight cars in Massachusetts. Upon these facts, ICR maintains that the Mássachusetts Long Arm Statute does not extend jurisdiction to it because it has not been “transacting any business in the Commonwealth” within the meaning of G.L.c. 223A, §3(a); or *95 “causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth,” within the meaning of G.L.c. 223, §3(d).
By implication, I assume ICR to contend, as well or for the same reasons, that Massachusetts lacks the minimal contacts with it required by the Due Process Clause of the Fourteenth Amendment for the exercise of jurisdiction by its courts.
1. Long Arm Analysis. In Massachusetts courts, in order to establish jurisdiction over an out-of-state defendant, a claimant must show both (a) one or more of the connections required by the Long Arm Statute; and (b) minimum due process contacts assuring “substantial justice and fair play” in the exercise of a state’s jurisdiction over an a nonresident. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979); and Heins Wilhelm Loh Wetzlar Optical Machinery GmbH & Co., KG, 26 Mass.App.Ct. 14, 16, 21 (1988). Initially the claimant carries the burden of proving the jurisdictional facts. Ajudge entertaining a motion to dismiss for lack of jurisdiction can consider factual information from both the plaintiff and defendant in order to determine those facts. See Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 292 (1985). If discovery and affidavit material came into consideration, the judge may treat the motion for dismissal as one for summary judgment and view the jurisdictional evidence in the light most favorable to the claimant. Tatro v. Manor Care, Inc., 416 Mass. 763, 765 (1994), citing Alioto v. Marnell, 402 Mass. 36, 37 (1988).
In substance, ICR proposes that the contacts of its boxcars with Massachusetts are so fortuitous and attenuated that they do not amount to “transacting any business” here under subsection 3(a) or to a “persistent course of conduct” or derivation of “substantial revenue from goods used ... or services rendered” here under subsection 3(d).
At this point in the case, however, I find ICR’s acknowledgments that it owned the three boxcars in operation; that they were packed with freight; that it derived revenue or value from the use of the boxcars by P&W; that a computerized system records the location and number of its boxcars in the nationwide interchange system; and that it derives revenue or value generally from that system, all presently furnish sufficient proof of “transacting business” and “deriving substantial revenue” under subsections (a) and (d). In particular, Massachusetts courts construe “broadly” the “transacting any business” clause of G.L.c. 223A, §3(a). Heins, 26 Mass.App.Ct. 14, 17, citing Good Hope Industries, 378 Mass. 1, 6-7.
ICR’s argument of fortuitous and attenuated contact at this point suffers from two factual and logical weaknesses. First, it has willingly entered an entire system of institutionalized fortuity in the form of the nationwide interchange system; and has done so as a business decision for profit. The company knows that it has set in motion across any number of states freight cars of its ownership and potential responsibility for defects undetectable by usual inspection from a borrowing railway. It can accommodate this system of fortuity and risk by insurance or fees set with other railways. The company realizes, or should realize, that its boxcars could travel through all 49 continental states with such volume or revenue as to create jurisdiction in any of them. This system does not resemble a process at random so much as one of calculated business risk. ICR has not cited any decision in which courts have treated the interchange system, per se, as a bar or impediment to state jurisdiction.
Second, the logic of ICR’s rationale at points seems to be that, because its boxcars could momentarily be anywhere, they are nowhere, except in those states where it chooses to maintain stationary assets (Illinois southward to Louisiana). The policy of the Long Arm Statute is that jurisdiction arises if the freight cars are located in state in sufficient volume or frequency to generate business or substantial revenue. ICR cannot simply invoke the indeterminacy of the contacts of its boxcars; or maintain a conscious unawareness of those contacts in order to defeat jurisdiction. It acknowledges that three of its loaded freight cars were in Worcester on the night of the accident; and that it can determine the location and number of its freight cars throughout the various states at any given time by computer.[2]
2. Due Process Analysis. As an additional requirement of state court jurisdiction over a nonresident, the Due Process Clause demands (a) that a potential defendant “purposefully avail” itself of, or “purposefully direct” its activities at, the laws and/or the residents of the forum state so that the defendant has “fair warning” of its susceptibility to suit in the courts of that state government; and (b) that, in the total calculus of the circumstances, the exercise of jurisdiction comply with traditional notions or expectations of “substantial justice and fair play.” Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 108-16 (1987); Burger King v. Rudzewicz, 471 U.S. 462, 471-78 (185); Heins, 26 Mass.App.Ct. at 21-27. “Substantial justice and fair play” typically include consideration of (1) the burden on the defendant; (2) the plaintiffs interest in obtaining convenient and effective relief; (3) the “interstate judicial system’s interest in obtaining the most efficient resolution of controversies"; and (4) the “shared interest of the several States in furthering fundamental substantive social policies.” Burger King Corporation, 471 U.S. at 477, quoting from World-Wide *96 Volkswagen Corporation v. Woodron, 444 U.S. 286, 292 (1980); Heins, 26 Mass.App.Ct. at 25-26.
A defendant has engaged in “purposeful availment” if he has intentionally directed business activities toward the forum state, even without physical presence there. Significant activities within the state are an availment of the privilege of conducting business there. They support jurisdiction. Burger King Corporation, 471 U.S. at 475-76 and cases cited. At the Supreme Court, some question persists over the degree of foreseeability or expectation necessary for an interstate product’s arrival in a forum state. In Burger King, the majority of six Justices concluded that a defendant had availed if it had “deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State” and if “those products subsequently injure[d] forum consumers” (emphasis added). Id. at 473. Later in Asahi Metal Industry Company, four Justices emphasized that the defendant must insert the product into the stream of interstate commerce with a reasonably specific “intent or purpose to serve the market in the forum State,” 480 U.S. at 112 (plurality opinion of O’Connor, Jr.); while four dissenting Justices emphasized that placement into commerce with reasonable foreseeability of the arrival of the product into the forum state was sufficient. 480 U.S. at 118-21 (partial dissenting opinion, per Brennan, J.).
In this instance, ICR should reasonably have foreseen that some of its rolling boxcars would come into Massachusetts, as a matter of experience or as a matter of consultation with the Association’s computer. It need not have specifically intended or directed them toward the Commonwealth.
The factors of substantial justice and fair play militate in favor of Massachusetts jurisdiction. (1) The burden on the defendant ICR from Massachusetts litigation is not obvious or substantial. The railroad has not explained why the defense of this case in the Commonwealth, as a practical matter, is any more onerous than the defense of it would be in Louisiana where it acknowledges jurisdiction. (2) Massachusetts has an obvious interest in adjudicating the dispute since the accident occurred within its borders and injured one of its residents. (3) The plaintiff has a convergent interest in reasonably efficient and convenient adjudication as an individual (rather than a corporate market participant engaged in interstate business) suffering an alleged injury in an accident close to his home. (4) And the interstate judicial system would seem to function most efficiently by a comprehensive adjudication of this dispute in a single-Massachusetts action embracing all four possible parties and all possible claims among them in a plenary proceeding. Presently, the suit contains the plaintiff resident; a defendant resident, P&W; an individual defendant resident of a neighboring state (Mr. LeFrancois, of Rhode Island, who accepts Massachusetts jurisdiction); and the resistant nonresident, ICR. LeFrancois and P&W may attempt to implead ICR as a third-party defendant or cross-claim against it.
By contrast, if ICR avoids jurisdiction, one or more additional suits in another jurisdiction will become necessary by Salmon and/or P&W and LeFrancois against ICR. Such fragmented, multiple, burdensome, and potentially inconsistent litigation is obviously inefficient and potentially unfair. See also Novak v. Tak How Inv. Ltd., 899 F.Supp. 25, 33-34 (D. Mass. 1995) (“the Gestalt factors”); and Salpoglou v. Shlomo Widder, M.D., 899 F.Supp. 835, 839 (D.Mass. 1995).
In sum, enough presently appears in the court papers (supplemented by oral argument) to furnish directly or by reasonable inference (see Heins, 26 Mass.App.Ct. at 20-21), the contacts between ICR and Massachusetts necessary to satisfy the minimal requirements of the Long Arm Statute, G.L.c. 223A, §3(a) and (d), and of the Due Process Clause. As a matter of doctrine under those law sources and as a matter of practical fairness, the present record does not require the effective dismissal of a claim by a plaintiff alleging serious personal injury from a latent structural defect in a set of revenue generating loaded freight cars owned by the defendant.
It remains open for the parties to determine more definitely the jurisdictional facts by further discovery. In particular, the plaintiff Salmon and the original defendants LeFrancois and P&W may wish to establish from the computer records of the American Association of Railroads the volume of ICR freight cars and associated revenues arising from Massachusetts during the period 1991 onward. Or ICR may wish to offer such information in probative form prior to trial. The present ruling will operate without prejudice to ICR’s right to renew its contention of lack of personal jurisdiction after the close of discovery.
ORDER
For the foregoing reasons, the court entertains, but ORDERS entry of DENIAL on the merits of, the defendant Central Railroad’s Motion for Reconsideration of the Allowance of Plaintiff Dennis Salmon’s Motion to Amend Complaint.

 Demers v. Illinois Central Railroad, 339 Mass. 247, 250-51 (1959) (patent defect visible to both operator line and injured claimant). Glynn v. Central Railroad Co., 175 Mass. 510, 511-12 (1900) (receiving railroad has responsibility for non “secret” defects after opportunity for inspection) (per Holmes, C.J.); and Lima v. Pennsylvania R.R., 105 F.Supp. 97, 98 (D.Mass. 1952) (affirming and applying Glynn).

 lthough ICR claims not to have engaged directly in business in Massachusetts in the past, it appears to have submitted to jurisdiction on one occasion, Demers v. Illinois Central Railroad, 339 Mass. 247, 248-49 (1959). That litigation does not prejudice it here. The company may have waived a jurisdictional objection for any number of practical or tactical reasons in that matter.